**Gary Lynn DICKEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64192.**

Court of Criminal Appeals of Texas, En Banc.

March 1, 1983.

C. David Stasny, Bryan, for appellant.

Travis B. Bryan, III, Dist. Atty. and W.W. Torrey, Asst. Dist. Atty., Bryan, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for attempted aggravated rape. After the jury returned a verdict of guilty, punishment, enhanced by a prior conviction, was assessed by the court at fifty-five years.

In his sole ground of error appellant contends "The trial court erred in overruling appellant's objection to evidence of an extraneous offense, the State having failed to qualify said offense under an exception to the general rule."

Appellant offered evidence that at the time of the offense he was playing cards and watching games at one Willie Idelbird's place.

An exception to the rule that an accused may not be tried for a collateral crime is that evidence of an extraneous offense may be admissible to refute a defensive theory raised by the accused. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr. App.). Upon offering evidence of the defense of alibi, appellant placed his identity in issue. *Wintters v. State,* 616 S.W.2d 197 (Tex.Cr.App.); *Jones v. State,* 587 S.W.2d 115 (Tex.Cr.App.).

After the defense rested, the State offered evidence from E_____ S_____ that on March 26, 1979 (5 days before the offense in question) a man identified as appellant raped her after he had "put a broken beer bottle to my neck, and told me if I did

anything, he would slit my throat." This testimony was admitted over the appellant's objection.

Appellant urges that there were not sufficient distinguishing characteristics common to both the extraneous offense and the offense for which he was on trial so as to render the extraneous offense admissible.

In *Wintters v. State,* supra, the rule stated in many of our cases[1] was repeated:

"Once the issue of identity has been raised, evidence of an extraneous offense is admissible to prove identity only *if there is some distinguishing characteristic* common to both the extraneous offense and the offense for which the accused is on trial." (Emphasis supplied.)

In holding that an extraneous robbery offense was admissible, this Court in *Collins v. State,* 577 S.W.2d 236 (Tex.Cr.App.) noted there were a number of dissimilarities in the offenses "such as the fact that the primary offense was committed by appellant alone and the extraneous one involved appellant and two confederates, and the primary offense involved the use of a firearm while the other offense did not." Citing *Ransom v. State,* supra the Court noted that present were such common characteristics as proximity in time or place and common mode of commission of the offense, and held that the dissimilarities did not destroy the extraneous offense's relevance in showing identity.

In criticizing a rigid rule relative to similarities in the primary and extraneous offenses this Court in *Ransom* noted that such a rule "apparently overlooks the well-established requirement that before any extraneous offense is admissible the offense must be clearly proven and the accused shown to have been its perpetrator."

In the recent case of *Messenger v. State,* 638 S.W.2d 883 (Tex.Cr.App.) reversal resulted from the admission of an extraneous offense[2] where the primary offense involved an adult woman while the extraneous offense involved a child, the primary offense involved a threat of force by means of a weapon while the extraneous offense involved no weapon, and the primary offense involved two acts of deviate sexual intercourse while the extraneous offense involved fondling a child's sexual organs.

■ In the instant case the primary offense and the extraneous offense occurred within a five day period. The victims in both instances were white A & M coeds. The assailant in both instances wore sunglasses. Both victims were at or about the places where they resided, the victim in the primary case was in the yard outside her place of residence while the victim in the extraneous offense was in the laundry room of her apartment. In both instances the assailant held a sharp object to the throat of the victim, in the primary offense a knife and a broken beer bottle in the extraneous offense.

We find sufficient similarities in the proximity of time and place as well as the mode of commission of the two offenses so as to constitute sufficient distinguishing characteristics as to permit the State to introduce the extraneous offense after the appellant raised the defense of alibi.

The judgment is affirmed.

ONION, Presiding Judge, concurring.

"As a general rule, in criminal cases the accused can be convicted, if at all, only by evidence that shows that he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible . . . ." 23 Tex.Jur.2d, Evidence, § 194, p. 294; *Young v. State,* 159 Tex.Cr.R. 164, 261 S.W.2d 836 (Tex.Cr.App.1953).

---

1. E.g. *Jones v. State,* supra; *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.); *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.).

2. On motion for rehearing, this Court noted it was not necessary to pass on correctness of opinion on original submission since the jury charge was found to be fundamentally defective.

There are exceptions to this general rule. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr. App.1972); 23 Tex.Jur.2d, Evidence, § 195, p. 300. One exception is that evidence of an extraneous offense may be admissible to refute a defensive theory raised by the accused. *Albrecht v. State,* supra. When a defendant raises the defensive theory of alibi, he places his identity in issue. *Jones v. State,* 587 S.W.2d 115 (Tex.Cr.App.1978); *Owens v. State,* 450 S.W.2d 324 (Tex.Cr. App.1969). Once the issue of identity is raised, evidence of an extraneous offense may become admissible. "It must be remembered, however, that even though evidence of another crime may be relevant to the instant proceeding, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator." 23 Tex.Jur.2d, Evidence, § 195, p. 300. Further, the extraneous offense is admissible on the issue of identity only, in addition to the above requirements, if there are some distinguishing characteristics common to both the extraneous offense and the offense for which the accused is on trial. *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr. App.1974).

The question presented in the instant case is whether the trial court erred in admitting evidence of an extraneous offense on the issue of identity.

The State offered evidence of the attempted aggravated rape as charged in the indictment. T_____ H_____, an A & M University student, testified that about 5 p.m. on March 31, 1979 she was working alone in a garden in the back yard of the house where she lived at 706 Park Place in College Station. She related appellant approached her and asked to use her telephone as his car had broken down. She gave a description of his clothing and noted he wore sunglasses. Appellant followed her into the house, pulled a knife and ordered her into the bedroom. He tried to pull down her pants. A struggle ensued, and T_____ H_____ screamed, grabbed at the knife, and the appellant left the house. She clearly identified the appellant as the perpetrator of the offense.

The appellant offered evidence of alibi— that at the time of the offense he was playing cards and watching games at Willie Idelburd's place.

The State, contending that identity had thus been called into issue, offered an extraneous offense on the issue.

E_____ S_____, an A & M University student, testified she lived at the Casa Del Sol Apartments, No. 1402, in College Station. On March 26, 1979, about 9 p.m., she was alone in the laundromat of the apartment complex. The appellant entered the laundromat wearing sunglasses and with a broken beer bottle and forced her from the building into a field. From there he forced her to a nearby lawyer's office and into an enclosed walkway. There he raped her. E_____ S_____ made a positive identification of appellant as the perpetrator of the offense.

The majority and the dissent do not disagree as to the general rule prohibiting the use of extraneous offenses, nor the exception to such rule, where the defensive theory of alibi places identity in issue. Each conclude the issue of identity was raised in the instant case by appellant's alibi defense authorizing the use of an extraneous offense if it were otherwise admissible. Each seem to agree that the evidence shows that appellant was the perpetrator of both offenses. They disagree over whether there were sufficient distinguishing characteristics common to both offenses to authorize the admission of the extraneous offense.

It is observed that the offenses occurred within five days of each other in the city of College Station, Brazos County. Each victim was a white A & M coed and the assailant in each case was a black man wearing sunglasses who was identified by each victim as the appellant. Each of the victims were alone at the time at or near the place they resided when the offenses occurred. The victim in the instant case was in the yard of her house. About 5 p.m. she was lured into the house by the ruse of appellant's need for a telephone. There he placed a knife to her throat and attempted

to rape her. The victim in the extraneous offense was in the laundromat of the apartment complex at 9 p.m. With a broken beer bottle he forced her into a field and then into an enclosed walkway near a lawyer's office where he raped her. In both incidents the appellant used a sharp object to the throat of the victim to enforce his demands.

The dissent, in concluding there were not sufficient distinguishing characteristics common to both offenses to make the extraneous offense admissible, notes the instant offense was in broad daylight at 5 p.m. while the extraneous offense was after dark at 9 p.m. Unless one has an obsession with B-grade horror movies of the 1930's and 1940's where the phantom strikes only at the stroke of midnight, he knows the stalking rapist often bides his time until he knows his chosen victim is alone, whether it is 5 p.m., 9 p.m. or any other hour of the day or night. The dissent seems to indicate a lack of similarity because in the instant case the offense occurred inside the house while in the extraneous offense the victim was forced to an outside location. The dissent overlooks the extraneous offense was eventually committed in an enclosed area, and overlooks that it was detection that the appellant sought to evade in both cases. If he had attacked the victim in the instant case in her yard at 5 p.m. in the daylight, he might have been observed. Likewise, in the extraneous offense if he had stayed in the laundry room he might have been interrupted by other apartment complex residents. By going out into the dark he sought to avoid observation. The evasion was present in both cases.

The dissent contends that there "is no evidence that the two offenses were committed in the same neighborhood," but does not define what it means by "neighborhood." Surely the dissent does not contend that an extraneous offense can never be admissible unless committed in the same neighborhood as the instant or primary offense. Proximity in time and place may be a factor, but it must be considered along with the other facts and circumstances. Here the offenses occurred in the same city

and county at 706 Park Place and near the Casa Del Sol Apartments. Both victims were A & M coeds. After hearing the evidence, the local district judge stated they occurred in the same neighborhood.

The dissent also relies on the fact that the kind of sunglasses worn on both occasions were not shown by the record. If the victims were experts and could have testified that the sunglasses were Ray-Ban, Christian Dior or Brand X, this would have been desirable, but this does not detract from the fact that the assailant in each case, identified as appellant, wore sunglasses in an apparent effort at disguise or to make identification more difficult.

The dissent acknowledges that a sharp instrument was placed to the victims' throats, but notes one was a knife and another was a broken beer bottle. This the dissent claims is "less similar" than two pistols. While this may be so, it does bear on the common mode of the commission of the offenses. A person prone to commit a certain type of an offense may resort to whatever weapons are available at the time.

Considering the proximity of time and place, the mode of the commission of the offenses and the other similarities, I would conclude that there were distinguishing characteristics common to both offenses, and that this along with identification of appellant as the perpetrator of both offenses authorized the admission of the extraneous offense on the issue of identity.

It is further observed that the court in its charge limited the use of extraneous offenses to the issue of identity.

I concur in the result reached.

ODOM, Judge, dissenting.

In his only ground of error appellant contests the admissibility of evidence of an extraneous aggravated rape. After a hearing outside the presence of the jury, the trial court ruled there were sufficient common distinguishing characteristics to support admission of the extraneous offense on the issue of identity.

The rules relating to this matter are expressed in *Wintters v. State*, 616 S.W.2d 197, 200 (Tex.Cr.App.):

"It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Hines v. State*, 571 S.W.2d 322 [ (Tex.Cr.App.) ]; *Cameron v. State*, 530 S.W.2d 841 [ (Tex. Cr.App.) ]; *Halliburton v. State*, 528 S.W.2d 216 [ (Tex.Cr.App.) ]. One of the exceptions we have recognized to this general prohibition against the use of extraneous offenses, is that such evidence is admissible to refute a defensive theory raised by the accused. *Buckner v. State*, 571 S.W.2d 519 [ (Tex.Cr.App.) ]; *Albrecht v. State*, 486 S.W.2d 97 [ (Tex.Cr. App.) ]. When the appellant raises the defensive theory of alibi, he places his identity in issue. *Jones v. State*, 587 S.W.2d 115 [ (Tex.Cr.App.) ]. Once the issue of identity has been raised, evidence of an extraneous offense is admissible to prove identity only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Todd v. State*, 598 S.W.2d 286 [ (Tex.Cr.App.) ]; *Jones v. State*, supra; *Ransom v. State*, 503 S.W.2d 810 [ (Tex.Cr.App.) ]."

In *Ford v. State*, 484 S.W.2d 727, 729–732 (Tex.Cr.App.), the Court discussed the requirement of common distinguishing characteristics:

"... if it is established that the accused committed an extraneous offense, and that there is some distinguishing characteristic common both to it and the offense for which the accused is on trial, then an inference may be drawn that the accused was the person who committed the primary offense. On the other hand, if there is no common distinguishing characteristic, then the evidence is offered only to show that the accused has once committed a crime, and is therefore likely to have committed the principal offense. This is not permitted.

"The common distinguishing characteristic may be the proximity in time and place of the extraneous offense to the offense for which the accused is being tried. Or, the common element may be the mode of commission of the crimes, or the mode of dress of the perpetrator, or any other element which marks both crimes as having been committed by the same person."

In this case appellant presented an alibi defense. Thus, an extraneous offense would be admissible if common distinguishing characteristics were shown. In overruling appellant's objection the trial court found common distinguishing characteristics: "Committed approximately the same time of day, by a black man-white woman; alone in her apartment; in the same neighborhood; within a week of the offense on trial." The record, however, reflects the attempted rape was in broad daylight, at about 5 p.m., while the extraneous offense was after dark at about 9 p.m. In one case the victim was working in her yard when approached by appellant who asked to use her phone and then assaulted her after they entered her house. In the other the rapist approached the victim in the laundry room of her apartment complex and the first thing he did was put a broken beer bottle to her neck and threaten her. She then was forced to an outside location where the rape was committed. There is no evidence that the two offenses were committed in the same neighborhood. The only similarities among those relied on by the trial court that are supported by the record are that the offender was black and the victim white, and that the offenses were within a one week period. *DeVonish v. State*, 500 S.W.2d 800 (Tex.Cr.App.), upon which the trial court expressly relied, is clearly distinguishable.

The State in its brief relies on additional similarities: both victims were Texas A & M coeds, the assailant in each offense wore sunglasses, and both assaults involved placing a sharp object to the victim's neck, one a knife, the other a broken beer bottle. In *Ford v. State*, supra, it was found that the use of a pistol in each case does not constitute a common distinguishing characteristic. Here the weapons were less similar than two pistols. There also was no testimony about the kind of sunglasses worn.

Although both victims happened to be Texas A & M coeds, this is not given any weight by a showing that they lived in the same neighborhood or both lived in a student housing area. The additional similarities urged by the State are no stronger an indication of the two acts being committed by a single offender than are those recited by the trial court.

The purpose of allowing an exception to the rule excluding extraneous offenses in cases where identity is placed in issue, is for use of the inference that the accused identified as the perpetrator of the extraneous offense is also the guilty party in the case on trial, because he is identified by witnesses to the extraneous offense and the similarities between the two offenses support a conclusion they were committed by the same person. If there are not sufficient similarities to support the conclusion that both offenses were committed by the same individual, the inference may not be made, and the reason for an exception to the exclusion of extraneous offenses does not arise. In this case there were not sufficient similarities to support a conclusion that both offenses were committed by the same person. The extraneous offense should not have been admitted.

The majority relies on the plurality opinion in *Ransom v. State,* 503 S.W.2d 810 (Tex.Cr.App.), in which it was stated that the requirement of distinguishing similarities "apparently overlooks the well-established requirement that before any extraneous offense is admissible the offense must be clearly proven and the accused shown to have been its perpetrator." To the contrary, what today's majority and the *Ransom* plurality obviously overlook is that the relevance of an extraneous offense to the issue of identity depends on *two independent propositions, both of which must be shown.* Distinguishing characteristics common to the extraneous offense and the primary offense must be sufficient to support a reasonable inference that both crimes were committed by the same person. Without such an inference, the extraneous offense does not contribute to resolving the identity issue. The majority's position ig-

nores logic when it ignores the common distinguishing characteristics prong of the two-prong test for admission of extraneous offenses to prove identity.

To the majority's flawed logic I must dissent.

MILLER, J., joins this opinion.

TEAGUE, Judge, dissenting.

I respectfully dissent to the majority's holding in this cause that an extraneous, collateral, and extrinsic criminal offense was admissible to rebut the appellant's defense of alibi, which was the reason the trial court admitted it into evidence at appellant's trial. The extraneous offense, an aggravated rape offense, had occurred almost a week before the attempted aggravated rape offense for which appellant was tried had taken place. It was totally unrelated to the State's case in chief, and did not in any way, shape, fashion, or form disprove or rebut the appellant's defense of alibi. Appellant had testified, in support of his defense of alibi, that "Me and 13 more others ... were over at Willie Idelbird's [playing cards]," when the primary offense was committed. The complaining witness in the extraneous offense was not shown by the prosecution to have even known where Willie Idelbird's place was situated in Bryan.

I personally find the reasons the majority gives for upholding the admissibility of the extraneous offense totally unacceptable, and sincerely believe that members of this Court, if they carefully analyze the reasons, the authorities, and the roots of the authorities the majority gives and cites for sustaining the admissibility of the extraneous offense, also will find them unacceptable.

"The general rule in all English speaking jurisdictions is that an accused person is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young v. State,* 159 Tex.Cr.R. 164, 261

S.W.2d 836 (Tex.Cr.App.1953). Such principle of law has been a part of the law of this State for over one hundred years. *Cesure v. State,* 1 Tex.App. 19 (1876). Furthermore, the intent of Article I, Section 10, Texas Constitution, which provides the following: "In all criminal prosecutions the accused shall have ... the right to demand the nature and cause of the accusation against him, and to have a copy thereof", is that an accused person shall be given sufficient information so that he may prepare his defense to the accusation lodged against him. *Huntsman v. State,* 12 Tex.App. 619 (1882); *Evans v. State,* 623 S.W.2d 924 (Tex.Cr.App.1981). The appellant in this cause was not put on notice through the State's pleading that the extraneous offense would be offered into evidence during the course of his trial. He was thus in no position to defend against the extraneous offense at the trial for the charged offense.[1]

To admit into evidence during the trial of the charged criminal offense an independent, unrelated, and collateral crime also flies in the face of the presumption of innocence, and has a tendency to draw away the minds of the jurors from the subject in issue, the primary offense, and to excite prejudice toward the accused and mislead the jurors as to the main issue they are to resolve, that is, whether or not the accused is guilty of the criminal offense for which he is on trial. Also see, *Gardner v. State,* 11 Tex.App. 265, 275 (1881).

The majority opinion pointedly tells us that "an accused may not be tried for a collateral crime." But it then proceeds to smash its statement to smithereens by invoking and applying a judicially created exception because the appellant injected into the case the defense of alibi. The exception is that evidence of another crime

is admissible to prove identity, when identity is in issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. The majority, without any discussion, also informs us that "Upon offering evidence of the defense of alibi, appellant placed his identity in issue." My research has yet to reveal, in the context in which the majority uses the word "identity", where this Court has ever discussed why the word "identity" has the meaning the majority gives it. I submit, however, that the word "identity", when used to suggest that the accused has placed identity into issue, simply means that the accused has made sufficient attack upon the identification testimony of the complaining witness to cause it to result in either no identification or equivocal identification of the accused as the wrongdoer.[2]

Many years ago, in *Northern Securities Company v. United States,* 193 U.S. 197, 400–401, 24 S.Ct. 436, 468, 48 L.Ed. 679 (1904), Justice Holmes commented that "Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment." Justice Holmes perhaps needed to add that bad law may also result from distorted or erroneous interpretations that are subsequently made of a particular case, which interpretations are thereafter adopted and re-adopted until, ergo, the original misinterpretation is hailed as being founded in stone.

The exception to the general rule of prohibition that is being applied in this cause comes to us through what I find to be

---

1. During his argument to the jury, appellant's counsel stated the following: "I really can't say what happened on that other case because I frankly wasn't really prepared for this. I wasn't prepared to defend Gary Dickey on two different charges in one trial, that are totally unrelated."

2. This, of course, does not mean to say that the identity of the accused will never be in issue in

a case. However, in this instance, the appellant in his cross-examination of the complainant never disputed that an offense had been committed against the complainant, or made an issue as to intent or consent; only that she had erroneously identified him as the wrongdoer. Thus, it was the complainant's ability to identify the appellant as the wrongdoer that was placed in issue; not the appellant's identity.

dictum that was expressed in this Court's decision of *Ford v. State,* 484 S.W.2d 727 (Tex.Cr.App.1972). Because of erroneous interpretations of that decision's holding, bad law has been caused to be placed in the books. The foundation of the majority's holding is based, not on stone, but instead quicksand. For this reason, *Ford,* Id., should be overruled.

None other than the author of the *Ford* opinion, Judge Roberts, observed in his dissenting opinion in *Ransom v. State,* 503 S.W.2d 810, 815 (Tex.Cr.App.1974), how the holding in *Ford v. State,* Id., was being misinterpreted by members of this Court. There, he told us what the true holding of *Ford* was: "Under Ford, evidence [of an extraneous offense] to rebut alibi was held to be admissible [only] if it placed the accused at a place where he claimed not to be, or if the evidence showed the impossibility of the alibi, even if the two offenses were dissimilar." Although not cited by the majority in its opinion, *Ford* is the root of the above exception the majority applies in this cause.

After carefully reading *Ford v. State,* Id., I find that what has caused erroneous interpretations to be made of the holding in that case lies in the fact that the opinion unnecessarily and unduly gave emphasis to what is actually dictum. However, Judge Roberts pointed out, after his elaborate discussion of the newly created exception, the following:

> In the instant case, the evidence, if relevant at all, was admissible only on the issue of identity. Appellant's alibi concerned only the date of commission of the present offense. That he was elsewhere nearly two months later does not refute his alibi. Also, the evidence was offered for the purpose of showing flight. That the appellant was in Houston nearly two months later does not indicate flight. See *Jones v. State,* 481 S.W.2d 900 (Tex. Cr.App.1972),

and then held that an extraneous offense was inadmissible.

A careful reading of *Ford v. State,* supra, and what Judge Roberts stated therein, re-

garding the newly created exception of "distinguishing common characteristic", quickly reflects that everything Judge Roberts stated in the opinion about the newly created exception was predicated upon an *assumption* that identity was in issue, i.e., he expressly stated: "In the instant case, *assuming* that identity was in issue, we do not feel that there was sufficient connection between the supermarket robbery and the robbery-murder at the chemical company to render evidence of the former admissible as tending to indicate that appellant committed the latter."

This cause is also a good example of why the "distinguishing common characteristics" exception should be put to bed. The facts, as set out in the majority opinion, with the single possible exception that both culprits were wearing sunglasses, do not otherwise lead one to conclude that in relation to the primary offense, the extraneous offense was so distinctive as to be the equivalent of the appellant's signature. See *Collazo v. State,* 623 S.W.2d 647, 649 (Tex.Cr.App. 1981). I submit that all the majority has done in its opinion is to list some general common characteristics, which would probably fit the facts of any number of cases this Court has decided, compare them to the two offenses, and on that account hold that there are distinguishing common characteristics between the primary offense and the extraneous offense. However, if one carefully reads the majority opinion, I think they will conclude, as I have, that the similarities between the primary offense and the extraneous offense are few, and that they are neither sufficiently distinguishing, novel nor unusual to render admissible into evidence in this cause the extraneous offense. Also see Judge Odom's dissenting opinion filed in this cause.

The fault of the exception lies in trying to apply it. It is truly evanescent. Where does a trial judge draw the line in making the determination whether or not to admit into evidence an extraneous offense? How many common characteristics must there be? What if the characteristics of the primary offense and the extraneous offense

are in all things identical but for the fact that in one offense the culprit had a gold tooth but in the other he did not have a gold tooth? In light of the present state of the law regarding the admissibility of an extraneous offense, I believe that a trial judge, in making the determination whether or not to admit an extraneous offense, rather than read and attempt to understand this Court's past decisions on "distinguishing common characteristics", would better spend his time polishing his ability to flip coins. In sum, there is absolutely no predictability in our law when it comes to deciding whether to admit into evidence an extraneous offense on this basis. This lack of predictability readily becomes apparent when one considers that Judge Odom, the author of the landmark decision of *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), is relegated today to the position of a dissenter.

Many years ago, the Oklahoma Court of Criminal Appeals pointedly stated in the following words why such an exception that the majority of this Court applies today is unworkable.

"In the very nature of things, there cannot be many cases where evidence of separate and distinct crimes, with no unity or connection of motive, intent, or plan, will serve to legally identify the person who committed one as the same person who is guilty of the other. The very fact that it is much easier to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime proves the dangerous tendency of such evidence to convict, not upon the evidence of the crime charged, but upon the superadded evidence of the previous crime. Hence our courts have been proverbially careful to subject such evidence to the most rigid scrutiny, and have invariably excluded it in cases where its relevance and competency are not clearly shown... [Such] evidence tends necessarily and directly to

load the prisoner down with separate and distinct charges of past crime, which it cannot be supposed he is or will be in proper condition to meet or explain, and which necessarily tend to very gravely prejudice him in the minds of the jury upon the question of his guilt or innocence. Such evidence gives opportunity for the conviction of an accused person upon mere prejudice, instead of by evidence showing the actual commission of the crime for which the defendant is on trial. It compels a defendant to meet an accusation not charged in the indictment, which he might successfully refute if given the opportunity to do so unembarrassed by other issues." *Miller v. State*, 13 Okl.Cr. 176, 163 P. 131, 133–134 (Crim. Ct.App.Okla.1917).

I will now attempt to demonstrate why this Court should hold, where the State has presented through its witnesses a clear, unblemished, and unmarred picture of the offense for which the accused is on trial, and the accused only injects into the case the defense of alibi, that any extraneous offense is inadmissible. See also *Carpenter v. State*, 596 S.W.2d 115, 120 (Tex.Cr.App. 1980) (Opinion on Original Submission; *Cain v. State*, 642 S.W.2d 806 (Tex.Cr.App. 1982).

In this cause, appellant was put to trial for allegedly committing the offense of attempted aggravated rape of a person I shall refer to as Joan, which is not that person's name. Joan made a positive, categorical, unequivocal, precise, clear, sure, certain, and sound identification, both in and out of court, that appellant was her assailant. Through her testimony and other testimony, the State was able to present to the jury a clear, unblemished, and unmarred picture of the offense involving Joan.[3] The appellant also presented to the jury, through his defense of alibi, another picture. The jury should have been allowed, without more, to decide which picture it

---

**3.** The record conclusively establishes that the appellant did not dispute that an attempted aggravated rape had been committed. His cross-examination of the State's witnesses

clearly shows that he attempted only to establish that the complaining witness was mistaken in her identification of him as the person who had committed the offense.

preferred. The fact that appellant injected into the case the defense of alibi did not mar or blemish the identification picture Joan made of the appellant. Identity was in issue, but only in the sense that the jury should have been required to believe either Joan's positive identification testimony or the appellant's evidence that he was elsewhere. The third picture the prosecution injected into the case did nothing more than allow for the possibility of confusing the jury as to what crime appellant was on trial for allegedly committing, and to prejudice the appellant.

The majority tells us that when appellant injected the defense of alibi into the case, he then placed *his* identity in issue. Is that a correct statement? Did not injecting the defense of alibi in this cause directly call into question Joan's ability to identify the appellant as her assailant? As such, the State should have been permitted to rehabilitate Joan. However, how did the extraneous offense that was committed the week before rehabilitate Joan's ability to identify appellant as her assailant? Again, when we speak of identity as being in issue, we are focusing upon the ability of the complaining witness to make an identification of the accused. Unless extraneous offense testimony goes to the complainant's ability to identify the accused as her assailant, it should not be admitted into evidence. This Court should therefore adopt the rule that where the prosecution has through its case in chief presented a clear, unblemished, and unmarred picture of the alleged offense, and the accused has only injected into the case the defense of alibi, an extraneous offense shall not be admissible unless it refutes the alibi defense or shows the defense of alibi was impossible or it can be established that it rehabilitated *the complaining witness'* ability to identify the accused.

In *Hafti v. State,* 416 S.W.2d 824, 826 (Tex.Cr.App.1967), Judge Belcher of this Court stated the following:

> The rule appears to be consistent that if the testimony of the state leaves no question as to intent or identity of the defend-

ant, proof of an independent crime is not admissible. Also, where there is positive testimony to support the state's case, proof of other independent offenses is not admissible.

The extraneous offense, under the facts at bar, should not have been admitted into evidence at appellant's trial. To the majority's holding that it was admissible, I respectfully dissent. See also Vol. VIII, *Land and Water Law Review,* "Evidence—Rules of Admissibility and Law of Probability," and Vol. 50–2, *Texas Law Review,* "The Admissibility Of Other Crimes In Texas."

