**Robert Banard WYSNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00543–CR.**

Court of Appeals of Texas,
Dallas.

March 12, 1987.

Debra Ellison Farris, Dallas, for appellant.

Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, for appellee.

Before WHITHAM, STEWART and McCRAW, JJ.

STEWART, Justice.

Appellant was charged with the offense of aggravated robbery. The jury found appellant guilty and sentenced him to seventy-five years' confinement in the Texas Department of Corrections. Appellant brings two points of error. We sustain the second and reverse and remand for a new trial.

Complainant, the manager of Eugene's Hamburgers in Oak Cliff, testified that at 5:45 p.m. on January 8, appellant entered the restaurant to pick up an order of chicken. Complainant told appellant that the chicken cost $12, and appellant gave complainant a one hundred dollar bill, which complainant refused because he was unable to make change. Appellant then pulled out a knife and told complainant to open up the cash register, which complainant did. A second person who had been standing by the window then came forward with a gun, pointed it at complainant, and told him not to move. With hands up, complainant watched as appellant took the money out of the cash register and his accomplice grabbed appellant's order of chicken. Complainant put his hands down, and appellant then cut complainant's arm with his knife, after which both appellant and the accomplice fled on foot.

The police arrested appellant on January 16. When the police arrested appellant, he was driving a stolen blue Monte Carlo. Appellant had no driver's license and no proof of insurance. The police were required to enter into a car chase in order to apprehend appellant.

Complainant made a positive identification of appellant from a photographic display on or about January 22. At trial, complainant said unequivocally that appellant was the person who robbed him.

Appellant raised an alibi defense. Appellant, his mother, his brother, and his common-law wife all testified that he was at a family party at the time the robbery was committed. Appellant also testified that he had never been to Eugene's Hamburgers and had never seen complainant before. In an effort to identify appellant, the State introduced at trial two extraneous offenses, one occurring on January 8, the same date as the offense in this case, and the other occurring on December 29.

The witness to the extraneous January 8 offense testified that he was a stocker at Bud's Supermarket in Oak Cliff and that at 10:50 a.m. appellant entered the store, leaned over the front counter where the money bag was kept, grabbed the bag and ran. The witness chased appellant to a nearby apartment complex. At one point, appellant told the witness to stop chasing him or he would shoot the witness. Appellant escaped in a waiting car, a blue Monte Carlo; another person was waiting for appellant in the car.

The witness to the December 29 offense testified that she was the manager of a Diamond Shamrock station in Oak Cliff. She testified that the store opened at 8:00 a.m. and that shortly thereafter appellant entered and asked her if she carried rolling papers, to which she answered, "No ...." Appellant then picked up a newspaper and walked off with it. The December 29 witness left her security booth and told appellant he would have to pay for the paper. Appellant smiled, revealing a missing front tooth. He then grabbed her, made a vicious face, and growled. The witness escaped and ran. She then saw appellant enter the security booth and take a total of $3,000 from the day safe and the drop safe. Appellant's friend was waiting for him near the station's pay phone, and the two of them left together.

At trial appellant demonstrated his missing tooth to the jury. Appellant said it had been missing for about seven years.

The trial court held an identification hearing outside the presence of the jury. The extraneous January 8 offense witness and the December 29 witness both identified appellant as the person who had robbed them on separate occasions.

Appellant brings two points of error. In his second point, he argues that the trial court committed reversible error in admit-

ting evidence of appellant's commission of extraneous offenses. For the reasons given below, we agree.

The established general rule of evidence is that proof of similar happenings, extraneous transactions, or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible. *Murphy v. State,* 587 S.W.2d 718, 721 (Tex.Crim.App.1979). The admission of extraneous offense evidence is unjustifiably prejudicial for two reasons. First, the accused is entitled to be tried on the accusation made in the State's charging instrument, which specifies the material issues of the case; the rudiments of due process require that the accused not be tried for collateral crimes of which he has no notice. *Jones v. State,* 568 S.W.2d 847 (Tex.Crim.App.), *cert. denied,* 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978), *judgment denying writ of habeas corpus rev'd sub nom. Jones v. McCotter,* 767 F.2d 101 (5th Cir.), *cert. denied,* 474 U.S. 947, 106 S.Ct. 345, 88 L.Ed.2d 292 (1985); *see also Martin v. State,* 722 S.W.2d 172 (Tex.App. —Beaumont 1986). Second, an accused's propensity to commit crimes is not an issue that is material to whether he is guilty of the specified conduct charged by the State; the introduction of evidence establishing such a propensity constitutes a trial of the accused as a criminal generally, which offends our system of justice. *Murphy v. State,* 587 S.W.2d at 721.

However, extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the State both that (1) the transaction is relevant to a material issue in the case and (2) the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Plante v. State,* 692 S.W.2d 487, 491 (Tex. Crim.App.1985). In addition, the Texas Court of Criminal Appeals has recently stated that its heretofore rote application of general rules and "automatic" exceptions for admissions of extraneous transactions are to be avoided. *Boutwell v. State,* 719 S.W.2d 164, 174 (Tex.Crim.App.1986) (opinion on motion for rehearing). An analysis must be made in every case in

which the admission of an extraneous offense is sought; courts must examine each case on its own facts, strengths, and weaknesses to determine whether the extraneous offense is relevant to a material issue and whether the relevancy value outweighs the prejudicial potential. *Id.* Using intent, the *Boutwell* court compared instances when the State's need to prove intent is strong and weak: When an act is otherwise innocent, extraneous acts are more likely to be more probative than prejudicial, whereas when the circumstances surrounding the offense are abundantly supportive of the inference of intent, the necessity for extraneous offenses to prove intent is minimal and the prejudice arising from their admission is comparatively great. *Id.* at 174.

Extraneous offenses may be admissible when the issue of identity is raised. *See, e.g., Dickey v. State,* 646 S.W.2d 232 (Tex.Crim.App.1983); *Jones v. State,* 587 S.W.2d 115 (Tex.Crim.App.1979) (opinion on rehearing). The State is correct in its contention that an alibi defense raises the issue of identity and extraneous offenses have been admitted to prove identity circumstantially. *Dickey v. State,* 646 S.W.2d at 233; *Wintters v. State,* 616 S.W. 2d 197 (Tex.Crim.App.1981); *Jones v. State,* 587 S.W.2d at 120. However, before extraneous offenses may be admitted to prove identity, additional requirements must be met.

For the purposes of showing identity, the test is whether there is some sufficiently *distinguishing* characteristic common to both the extraneous offenses and the offense for which defendant is charged so as to earmark it as the handiwork of defendant. *Messenger v. State,* 638 S.W.2d 883, 886 (Tex.Crim.App.1982); *Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981); *Ransom v. State,* 503 S.W.2d 810, 812 (Tex. Crim.App.1974). A higher degree of similarity is required to show identity than to show intent. *Plante v. State,* 692 S.W.2d at 493. " '[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' " *Collazo v. State,* 623 S.W.2d at 648, quoting E. Cleary, *McCormick's*

*Handbook of the Law of Evidence,* 449 (2d ed. 1972). Absent a sufficiently distinctive characteristic, the relevancy of the evidence cannot outweigh its prejudicial potential. *Collazo v. State,* 623 S.W.2d at 648; *see Ford v. State,* 484 S.W.2d 727 (Tex. Crim.App.1972).

 The State emphasizes the following similarities between the offenses: (1) All three offenses occurred in Oak Cliff, (2) all three offenses occurred within a two week time span, (3) all three offenses involved violence and stealing, (4) all three offenses involved a second person, and (5) all three involved thefts of cash from small businesses where only one or a few persons were working. We are not persuaded.

The extraneous January 8 theft of Bud's Supermarket was performed by one person; the second person was not at Bud's Supermarket. In the present case, two persons committed the actual taking of the cash. No weapons were displayed during the extraneous January 8 theft; a knife and gun were displayed in the offense alleged. The blue Monte Carlo was used to make the escape in the extraneous January 8 theft; complainant in the present case testified that both men entered and departed the restaurant on foot. The fact that appellant was arrested in a blue Monte Carlo tends to show that he committed the extraneous January 8 offense, but it proves nothing regarding the offense for which he is charged here.

The December 29 theft of the Diamond Shamrock station again involved only one active thief and no weapons were used, whereas in the present case there were two active participants and weapons were used. Regarding the thief's missing tooth that aided the December 29 witness in identifying appellant, the complainant in the present case testified that he noticed nothing unusual about appellant's teeth. The missing tooth illustrates that the December 29 witness may have found her assailant, but it does not help identify appellant as the person who committed the theft of which he is here accused.

With regard to both extraneous offenses, the fact that they occurred in Oak Cliff within a two week span, involved violence and stealing, involved second persons, and involved thefts of cash from small businesses, does not illustrate characteristics that are so nearly identical in method to the instant offense as to earmark them as the handiwork of appellant. Far from being distinctive, these "characteristics" would describe a great many robberies and thefts committed by persons other than appellant. In short, we hold that these general similarities are not so distinctive as to make them relevant to the issue of identity.

Furthermore, complainant consistently testified that appellant was the person who robbed him. Consequently, the probative value to the jury in hearing the testimony about these two extraneous offenses is undoubtedly outweighed by the prejudicial effect that inevitably accompanied their admission into evidence. *See, e.g., Messenger v. State,* 638 S.W.2d at 883; *Collazo v. State,* 623 S.W.2d at 647; *Ford v. State,* 484 S.W.2d at 127.

In light of the seventy-five year sentence assessed against appellant, we cannot say with certainty that appellant was not harmed. Because we sustain appellant's second point of error, we need not consider his remaining point.

The judgment is reversed and the cause remanded for new trial.