Richard Lee MAYFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–382–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 31, 1991.

Mark Alexander, McAllen, for appellant.

Theodore C. Hake and Rene Guerra, Dist. Attorney's Office, Edinburg, for appellee.

Before NYE, C.J., and SEERDEN and HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Richard Lee Mayfield, guilty of aggravated robbery. One prior felony offense was alleged in the indictment for enhancement purposes. The jury assessed punishment at life in the Texas Department of Criminal Justice, Institutional Division, plus a $10,000.00 fine. By seven points of error, appellant brings this appeal. We affirm the trial court's judgment.

The State's evidence shows that in the early morning of January 22, 1988, Glen Weathers was working alone at Perez' Exxon station in McAllen, Texas. Appellant came in and wanted to know where he could get a room. Weathers told him that the Red Carpet Inn had rooms. Appellant gave Weathers a dollar and asked for change. Weathers gave him change and heard coins drop into the Coke machine. Appellant told him that the machine did not work. Weathers pushed a selection button, and a Dr. Pepper dropped out. Appellant told Weathers that he wanted a Coke instead of a Dr. Pepper. Weathers told him that he would return his change. As Weathers started to open the cash register, appellant came up behind him and said, "All right. Give me all your money." Weathers turned around, and appellant shot him with a chrome-plated firearm. Weathers said that appellant held the gun about waist high. His arm was not extended. At the time of the alleged robbery, only Weathers and appellant were in the station. The defense was an alibi.

By point one, appellant complains that the trial court erred in admitting two photographs into evidence and allowing the jury to view the victim's surgical scar. During the guilt-innocence phase, the State offered into evidence Weathers' photograph. The photograph shows Weathers lying in bed, wearing an oxygen mask. Weathers' surgeon testified that the photograph fairly and accurately represented the way Weathers looked when the photograph was taken. Counsel objected that the photograph was not relevant and that its prejudicial and inflammatory nature outweighed its probative value. The photograph was admitted into evidence.

Rule 403 of the Texas Rules of Criminal Evidence governs the admissibility of photographs. *Madden v. State,* 799 S.W.2d 683, 696 (Tex.Crim.App.1990). Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Rule 402 provides that "[a]ll relevant evidence is admissible.... Evidence which is not relevant is inadmissible." Rule 401 provides that "[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the

evidence." Once the proponent of an item of evidence shows that the evidence is logically relevant to some issue in the trial under Rule 401, it is admissible under Rule 402 unless the opponent of the evidence demonstrates that it should be excluded because of some other provisions, whether constitutional, statutory, or evidentiary. *Montgomery v. State,* No. 1090–88, slip op. at 4 (Tex.Crim.App. May 30, 1990) (not yet reported).

It is the opponent's burden to not only demonstrate the proffered evidence's negative attributes but to show also that these negative attributes *"substantially outweigh"* any probative value. *Montgomery,* slip op. at 6; *Crank v. State,* 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App.1988). A trial court should be allowed the discretion to exclude or admit evidence, and an appellate court should not set aside the trial court's rulings absent a showing in the record that the trial court has abused that discretion. *Montgomery,* slip op. at 10.

The indictment alleges that appellant caused bodily injury to Weathers by shooting him. The photograph supports the allegation that Weathers suffered bodily injury. We hold that the photograph is relevant and that the trial court did not abuse its discretion in admitting the photograph.

■ During the punishment phase, counsel pointed out to the trial court that appellant's pen packet included a photograph of appellant. He argued that the photograph is not relevant and that its prejudicial effect outweighed its probative value. The trial court admitted the pen packet into evidence. At the punishment phase, the State may prove that a defendant is a person previously convicted of a crime. *See Daniel v. State,* 585 S.W.2d 688, 690 (Tex.Crim.App.1979). One method of doing this is to introduce certified copies of the judgment, sentence and record of the Texas Department of Corrections or a county jail including the accused's fingerprints supported by expert testimony identifying them with the defendant's known prints. *Daniel,* 585 S.W.2d at 690. Here, the State needed to show that the pen packet belonged to appellant. Even though the State showed that the fingerprints included with the pen packet matched appellant's known prints, the photograph was necessary to show identity. We hold that the photograph is relevant and that the trial court did not abuse its discretion in admitting the photograph.

■ During the guilt-innocence phase, counsel argued to the trial court that allowing the jury to view Weathers' surgical scar would evoke their sympathy. He also argued that the scar's appearance was not relevant and that its prejudicial effect outweighs its probative value. A scar is inadmissible if it has an ugly, ghastly or revolting appearance or condition that could be reasonably calculated to influence and prejudice appellant's rights with the jury. *Salinas v. State,* 363 S.W.2d 265, 266 (Tex. Crim.App.1962); *Phillips v. State,* 770 S.W.2d 824, 828 (Tex.App.—El Paso 1988, no pet.). Weathers' scar is twelve to fourteen inches long and appears on his abdomen. There is nothing to indicate that Weathers' scar had such an appearance. Here, the scar supports the allegation that Weathers suffered bodily injury. We hold that the scar is relevant and that the trial court did not abuse its discretion in allowing the jury to view the scar.

■ By point two, appellant contends that the State's conduct denied him due process and a fair trial. Through sixteen subpoints, appellant cites numerous instances of alleged prosecutorial misconduct. By subpoint A, appellant complains that the State invited him to testify. During a pre-trial hearing, the State said that appellant had something to say. Assuming the State invited appellant to testify, the State's remark was made outside the jury's presence. Therefore, it could have no harmful effect.

■ By subpoint B, appellant complains that the State commented that counsel was being misleading and that the State gave an "unsworn jury speech." Appellant refers to several pages of voir dire examination. Appellant made no objections to the State's comments. Failure to object at trial waives error, if any. *Drew v. State,*

743 S.W.2d 207, 220 (Tex.Crim.App.1987); *Esquivel v. State*, 595 S.W.2d 516, 522 (Tex.Crim.App.1980), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1981); Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1). Moreover, a mistrial will not be granted during voir dire unless the complained-of statement injects injurious and prejudicial matters before the panel which are reasonably calculated to prevent a fair trial before an impartial jury. *Herring v. State*, 758 S.W.2d 849, 853 (Tex.App.—Corpus Christi 1988, pet. ref'd). None of these comments inject injurious or prejudicial matters which are reasonably calculated to prevent a fair trial before an impartial jury.

■ By subpoint C, appellant complains that the State repeatedly led a witness and summed up testimony. Officer Avila testified that he asked two motel clerks, Pena and Bryant, if they had seen anybody fitting the suspect's description. The State asked Avila, "So Pena and Bryant based on the description that you have given them are now saying the individual—." At this point, counsel objected. Here, counsel did not allow the State to finish its question. Therefore, we cannot determine whether the State is leading or summing up testimony.

Later, the State asked Avila, "You then leave to tell your sergeant, and while you are gone you overhear over the radio that the description has changed; is that correct, sir?" Avila answered, "Yes." At this point, counsel objected. A timely objection is required in order to preserve error regarding the alleged improper admission of evidence. Tex.R.App.P. 52(a). In order for the objection to be considered timely, it must be made as soon as the ground for the objection becomes apparent. *Thompson v. State*, 691 S.W.2d 627, 635 (Tex. Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Villalobos v. State*, 756 S.W.2d 847, 852 (Tex. App.—Corpus Christi 1988, no pet.). Here, the alleged grounds for objection became apparent at the moment the State completed its question. Appellant has not shown good cause for the delayed objection. Therefore, nothing is preserved for review.

■ The State also asked Avila, "Okay. Would you tell the ladies and gentlemen of the jury if you then informed the clerk of the change in the description of the suspect?" Appellant objected that the State was leading its witness. The trial court overruled the objection. Even though the question may be leading, the mere asking of a question does not constitute reversible error where no new fact is injected and no statute is violated. *Kirkpatrick v. State*, 515 S.W.2d 289, 294 (Tex.Crim.App.1974); *Tovar v. State*, 777 S.W.2d 481, 494 (Tex. App.—Corpus Christi 1989, pet. ref'd).

■ By subpoint D, appellant complains that the State accused counsel of misconduct. During counsel's cross-examination, the State objected that counsel was writing on a State's exhibit. The trial court sustained the objection. Defense counsel did not object that the State had accused him of misconduct. Absent an objection, nothing is preserved for review. *Drew*, 743 S.W.2d at 220; *Esquivel*, 595 S.W.2d at 522; Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1).

■ By subpoint E, appellant complains that the State accused counsel of misstating evidence. Counsel asked Officer Rogers, "Doesn't it seem strange to you, sir, that this individual [Mr. Westingberg] could not remember his name,—how to spell his name?" The State objected that counsel had misstated the evidence. The trial court sustained the objection. Officer Avila previously testified that Westingberg was one of the suspects staying at a motel. He said that the motel clerks did not know how to spell Westingberg's name. Avila did not say that Westingberg could not spell his own name. Therefore, we hold that the State's objection was proper and that the trial court did not err when it sustained the objection.

■ By subpoint F, appellant complains that the State made an unsworn jury speech in order to evoke sympathy for the victim. This subpoint concerns the State's request that Weathers show his surgical scar to the jury. After making its request, the State argued to the trial court why

Weathers should be allowed to show his scar to the jury. Counsel did not direct an objection to the content of the State's argument. Therefore, nothing is preserved for review. *Drew,* 743 S.W.2d at 220; *Esquivel,* 595 S.W.2d at 522; Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1).

By subpoint G, appellant complains that the State accused counsel of misstating the law. During cross-examination, counsel asked Weathers, "[Y]ou understand that under the law of the United States, that if you say something at one hearing and say something different at another hearing, then you can get charged with perjury?" The State objected that this is a misstatement of the law. The trial court sustained the objection. Counsel's question is not a correct explanation of perjury law. Counsel could have rephrased the question in the correct posture. The trial court did not err when it sustained the objection.

■■■ By subpoint H, appellant complains that the State accused counsel of leading a witness. On direct-examination, counsel asked a witness, "Do you know if Richard [appellant] was looking for work?" The witness said that he was. The State objected that counsel was leading the witness. The trial court sustained the objection, but did not strike the answer. The objection, even if improper, is harmless. The witness responded, and the objection did not injure appellant's rights before the jury.

■■■ By subpoint I, appellant complains that the State tried to use a witness to "strike back" at counsel. The State asked a witness, "I'm not trying to confuse you. I'm trying to just get at the truth here, okay, so let's start from the very top again. When was the last time—." Appellant objected, but the trial court did not rule. The proper method of pursuing an objection until an adverse ruling is obtained is to: 1) make an objection; 2) request an instruction to disregard; and 3) move for a mistrial. *Fuentes v. State,* 664 S.W.2d 333, 336 (Tex.Crim.App.1984); *Vela v. State,* 771 S.W.2d 659, 662 (Tex.App.—Corpus Christi 1989, pet. ref'd). Appellant did not

receive an adverse ruling. Therefore, nothing is preserved for review.

■■■ By subpoint J, appellant complains that the State tried to evoke sympathy for Weathers and that the State implied that a defense witness was holding back testimony. On cross-examination, the State asked appellant's wife if she knew that the victim was a sixty-five-year-old man. She said, "No." Counsel objected after the witness answered. Without showing good cause for the late objection, nothing is preserved for review. Tex.R.App.P. 52(a); Tex.R. Crim.Evid. 103(a)(1). Further, Weathers had previously testified that he was sixty-five years old. Error, if any, is harmless.

By subpoint K, appellant complains that the State commented that a defense witness was prepared. During the State's cross-examination of a defense witness, the State said, "Judge, I don't think this witness can be led to say anything that she doesn't want to say, Judge." Counsel objected, and the trial court sustained the objection. Counsel requested no further relief. Appellant did not receive an adverse ruling; therefore, nothing is preserved for review. *Fuentes,* 664 S.W.2d at 336; *Vela,* 771 S.W.2d at 662.

By subpoint L, appellant complains that the State made improper comments when counsel requested a supplemental police report. The State's comments were made outside the jury's presence. Therefore, they could have no harmful effect.

■■■ By this same subpoint, appellant refers to the State's objections made in pages 753–759 of the statement of facts. He does not raise any specific complaint concerning these objections. Further, counsel lodged no objections to these remarks. Absent an objection, nothing is preserved for review. *Drew,* 743 S.W.2d at 220; *Esquivel,* 595 S.W.2d at 522; Tex.R. App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1).

By subpoints M through P, appellant complains of the State's comments made during final argument. The scope of permissible jury argument is: 1) summation of the evidence; 2) reasonable deduction from the evidence; 3) answer to opposing coun-

sel's argument; or 4) plea for law enforcement. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990); *Hinojosa v. State,* 788 S.W.2d 594, 597 (Tex.App.—Corpus Christi 1990, pet. ref'd). If error was committed, the proper standard of review is whether, in light of the record as a whole, there is a reasonable possibility that the complained-of argument might have contributed to the defendant's conviction or punishment. *Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App.1990); Tex.R. App.P. 81(b)(2).

■ By subpoint M, appellant complains that the State accused counsel of misrepresenting testimony. During final summation, counsel argued: "And there is a disagreement as to what was said by one of the officers here when one of the officers talked to the clerks at the Roadway Inn. And the clerk said—well, I thought it was kind of strange because they couldn't remember their last name." The State objected that counsel was misrepresenting the testimony. Here, counsel did not object to the content of the State's objection. Absent an objection, again there is nothing preserved for review. *Drew,* 743 S.W.2d at 220; *Esquivel,* 595 S.W.2d at 522; Tex.R. App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1).

■ By subpoint N, appellant complains that the State accused counsel of using tactics and taking the jury on rabbit trails. Counsel, during final summation, reminded the jury that the fingerprints taken at the crime scene did not match appellant's known prints. The State, in its final summation, accused counsel of using the fingerprint issue as a rabbit trail. Counsel's objection was overruled. The State's argument answers counsel's earlier argument. Further, the argument did not result in an uninvited and unsubstantiated accusation of improper conduct which is reversible error even if a trial court sustains an objection and instructs the jury to disregard. *Orona,* 791 S.W.2d at 128.

■ By subpoint O, appellant complains that the State accused counsel of failing to fulfill his promises. The State argued that appellant failed to prove that he was in Arlington on January 22, 1988. Counsel objected that the State was attempting to use him as a State's witness. The trial court overruled the objection. Counsel's objection does not comport with his subpoint raised on appeal. Therefore, nothing is preserved for review. *Drew,* 743 S.W.2d at 220.

By subpoint P, appellant complains that the State accused counsel of misleading the jury and taking them on a rabbit trail. Counsel refers generally to two pages of the statement of facts. Based upon appellant's subpoint, the corresponding argument is: "Then he [counsel] says, "What about the R–U–S?" Another rabbit trail so that you can get lost trying to figure out what does R–U–S stand for." Counsel made no objection to these remarks. Absent an objection, nothing is preserved for review. *Drew,* 743 S.W.2d at 220; *Esquivel,* 595 S.W.2d at 522; Tex.R.App.P. 52(a); Tex.R.Crim.Evid. 103(a)(1). After carefully considering all of appellant's complaints, we hold that the State's conduct did not deny appellant his rights to due process and a fair trial.

■ By point three, appellant complains that the trial court erred when it failed to allow a witness to testify. During the punishment phase, appellant called a witness, Pedro Gomez. In a bill of exceptions, Gomez testified that he was at Perez' Exxon at approximately 1:15 a.m. on January 22, 1988. While paying the attendant, Gomez turned around and saw a man standing behind himself. Gomez said that this man was not appellant. Gomez saw nothing else. The trial court did not allow Gomez to testify.

The Court of Criminal Appeals has discussed a similar situation in *White v. State,* 444 S.W.2d 921 (Tex.Crim.App.1969). In *White,* the defendant, at the punishment phase, sought to testify to his version of the facts. *White,* 444 S.W.2d at 923. The court held that this evidence was properly excluded as not being relevant at the punishment phase. *White,* 444 S.W.2d at 923. *See also Nixon v. State,* 572 S.W.2d 699, 701 (Tex.Crim.App.1978) (holding that evidence of affirmative defenses which would

exonerate a defendant is not admissible at the punishment phase). The punishment phase is directed to the defendant's prior criminal record, his reputation and character, and evidence tending to mitigate punishment. *Thomas v. State*, 750 S.W.2d 234, 235 (Tex.App.—Dallas 1986, no pet.). Here, the excluded evidence was not directed to appellant's prior criminal record, reputation and character, or mitigation; rather, it suggests that appellant did not commit the alleged offense. Therefore, the evidence is not relevant to appellant's punishment. *See Nixon*, 572 S.W.2d at 701; *White*, 444 S.W.2d at 923. We hold that the trial court did not err by excluding the testimony.

By point four, appellant complains of the State's jury argument. By subpoint 4A, appellant complains of attacks on counsel. The first comments which appellant refers to have been discussed in subpoint N. We have already held these remarks not to be reversible error. The other complained-of comments have been stated in subpoint O. Counsel's objection to these remarks does not comport with the complaint raised in subpoint 4A. Therefore, nothing is preserved for review. *Drew*, 743 S.W.2d at 220.

By subpoint 4B, appellant complains of sidebar remarks. The alleged sidebar remarks are, "He [counsel] asked the Jury to ask me some questions. I'm only doing the same thing. I'm saying, "Jury, ask him some questions." He told you he was going to do something, and he didn't do it. Perhaps you should ask him." The trial court sustained counsel's objection. Counsel, however, requested no further relief. Therefore, nothing is preserved for review. *Fuentes*, 664 S.W.2d at 336; *Vela*, 771 S.W.2d at 662.

■ By subpoint 4C, appellant complains that the State shifted the burden of proof. The State argued:

When he brought you this piece of evidence Defendant's Exhibit 11, what did he show you here? Nothing, nothing that he can use to establish that his client was not here in Hidalgo County. As a matter of fact, you can ask Defense counsel where is—he wants to prove to you that he was in Dallas.

He didn't have to put on any evidence, but he did. And he brought to you—he is the one that submitted Defendant's Exhibit No. 11. If he wants to prove where his client was, why didn't he bring into you a man by the name of John that is noted on Defendant's Exhibit No. 11.

Defendant's Exhibit No. 11 is appellant's unemployment benefit information on file with the Texas Employment Commission. A TEC claims supervisor testified that according to this exhibit, appellant filed his claim in Arlington, Texas, and did not make a personal contact with the TEC on January 22, 1988 (the date of the alleged offense). We hold that the State's jury argument is a reasonable deduction from the evidence and does not shift the burden of proof to appellant.

■ By point five, appellant complains that the trial court erred when it failed to suppress Weathers' in-court identification. Appellant contends that Weathers' pre-trial photo identification was suggestive because he is the only person in the lineup who fits the age and hair color. He also argues that only he and another person in the lineup are wearing blue and white checkered shirts.

A defendant who challenges the in-court identification must show by clear and convincing evidence that the identification was irreparably tainted, or an appellate court will not reverse a conviction on these grounds. *Herrera v. State*, 682 S.W.2d 313, 318 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). Convictions based on eyewitness identification at trial, following a pre-trial photo identification, will be set aside only if the photo identification procedure was so impermissible suggestive that it gave rise to a substantial likelihood of irreparable misidentification. *Ward v. State*, 474 S.W.2d 471, 475 (Tex.Crim.App. 1971); *Criollo v. State*, 718 S.W.2d 876, 877 (Tex.App.—Corpus Christi 1986, no pet.). In *Ward*, the court stated (footnotes omitted) that "[w]hile it might be better practice to use photographs which portray

persons whose every feature matches the pre-identification description, we do not feel that either due process of law or common sense requires such procedure." *Ward,* 474 S.W.2d at 476.

During the pre-trial hearing to suppress, Weathers testified that appellant was inside the Exxon station for approximately ten minutes. Weathers stood four or five feet from appellant and talked with him for about five minutes. Weathers had several opportunities to look at appellant face-to-face. He said that the station is fairly well lit inside. He is certain that appellant was the person who allegedly shot him.

Officer Rogers testified that on the day of the alleged offense, Weathers told him that the suspect was an Anglo male, middle to late thirties, approximately six feet tall, slim built, 160 pounds, short, combed over, light brown hair, no glasses, and clean shaven. The suspect wore a blue and white flannel shirt and blue jeans. On February 2, 1988, he and Officer Guerrero .showed Weathers a photo lineup containing six photographs. Weathers was shown the six photos simultaneously. Rogers and Guerrero did not tell Weathers that the lineup included a suspect, and they did not influence Weathers in any way. Weathers only selected appellant's photo. Rogers said that all of the photos depict slim built Anglo males between the ages of 30 and 35. He said they are approximately the same height (six feet) and weight. He also said that two photos show persons with brownish blond hair, and one shows a person with blond hair. He said that appellant's photo shows him with light blond or gray hair. We have looked at the black and white copy of the lineup and note that the persons shown are similar in appearance.

Appellant has not shown, by clear and convincing evidence, that Weathers' pre-trial photo identification was irreparably tainted. The pre-trial photo identification procedure was not impermissible suggestive, and, therefore, did not give rise to a substantial likelihood of irreparable misidentification. We hold that the trial court did not err by failing to suppress Weathers' in-court identification.

■ By point six, appellant complains that the trial court erred when it failed to submit an eyewitness instruction in the charge. The sufficiency of eyewitness identification testimony necessary for conviction is a matter for the trier of fact. Identification is part of the State's general burden of proof. Therefore, a defendant is not entitled to a special instruction on identity as a defensive issue. *See Rickman v. State,* 677 S.W.2d 271, 273 (Tex.App.—Fort Worth 1984, pet. ref'd).

■ By point seven, appellant complains that the trial court erred in admitting evidence of an extraneous offense. Rule 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The exclusion of evidence under Rule 404 is based, not on its lack of probative value, but rather on its unfair prejudicial effect. *Montgomery,* supra.

Extraneous offenses may be admissible when the issue of identity is raised. *See, e.g., Dickey v. State,* 646 S.W.2d 232, 233–34 (Tex.Crim.App.1983); *Jones v. State,* 587 S.W.2d 115, 119–20 (Tex.Crim.App. 1979). In some cases, an alibi defense raises the identity issue, and extraneous offenses have been admitted to prove identity circumstantially. *Dickey,* 646 S.W.2d at 233; *Wintters v. State,* 616 S.W.2d 197, 200 (Tex.Crim.App.1981); *Wysner v. State,* 763 S.W.2d 790, 792 (Tex.App.—Dallas 1987, pet. ref'd).

For the purposes of showing identity, the test is whether there is some sufficiently *distinguishing* characteristic common to both the extraneous offense and the offense for which the defendant is charged such that both offenses can be earmarked as the accused's handiwork. *Messenger v. State,* 638 S.W.2d 883, 886 (Tex.Crim.App. 1982); *Collazo v. State,* 623 S.W.2d 647,

648 (Tex.Crim.App.1981); *Wysner*, 763 S.W.2d at 792. "[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Collazo*, 623 S.W.2d at 648.

In the instant case, appellant raised the defensive theory of alibi when his wife related that he was in Arlington at the time of the alleged offense. By raising this defensive theory, his identity was placed in issue. It then became permissible for the State to prove identity for the instant offense through evidence of an extraneous offense. Maximiliano Karr testified that on January 20, 1988, appellant robbed him while he worked at a bar located in Progresso, Texas. The State proved that in both robberies, an Anglo male acting alone entered a business wearing blue jeans and a blue and white checked shirt. The robber first requested assistance. In Weathers' case, the robber requested a motel room. In Karr's case, the robber requested to use the rest room, and he requested a pen and paper. In each instance, the robber desired a soft drink and change for a dollar. As the person went to the cash register to get change, the robber, as he stood behind the person, exhibited a chrome-plated firearm and demanded money. The robber did not fully extend his arm which held the weapon. Both robberies occurred at night when no one else was present. Further, the robberies occurred two days apart in the same county.

In view of the common mode of commission of the offenses, we conclude that they had sufficient distinguishing characteristics which permitted the State to introduce evidence of the extraneous offense after appellant raised the defensive theory of alibi. Thus, we hold that the introduction of the extraneous offense is relevant and that the trial court did not abuse its discretion in admitting the extraneous offense.

The trial court's judgment is AFFIRMED.