Faustino COLLAZO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 59342.

Court of Criminal Appeals of Texas,
Panel No. 1.

Sept. 30, 1981.

Rehearing Denied Dec. 2, 1981.

Will A. Morriss, Jr., San Antonio, for appellant.

Joe Grady Tuck, Dist. Atty., Kerrville, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and DALLY, JJ.

OPINION

ROBERTS, Judge.

█ A jury found the appellant guilty of sexual abuse and assessed a punishment of confinement for twelve years. The question presented is whether the trial court erred in admitting evidence of an extraneous offense. Such questions involve principles of law which were stated well in *Murphy v. State*, 587 S.W.2d 718, 721–722 (Tex. Cr.App.1979) (footnotes omitted) (emphases omitted):

"It is an established general rule of evidence that proof of similar happenings, extraneous transactions or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible.

"In a criminal proceeding, when the extraneous or similar transaction committed by the accused, sought to be admitted by the State, constitutes a criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial because: (1) the accused is entitled to be tried on the accusation made in the State's charging instrument which specifies the 'material issues' of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he has no notice, *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978); *Walls v. State*, 548 S.W.2d 38 (Tex.Cr. App.1977); *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836 (1953); *Couch v. State*, 155 Tex.Cr.R. 585, 238 S.W.2d 198 (1951); and (2) an accused's 'propensity to commit crimes' is not an issue which is material to whether he is guilty of the

specified conduct charged by the State; it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused as a 'criminal generally' which offends our system of justice. *Young*, supra; *Couch*, supra; *Clements v. State*, 147 Tex.Cr.R. 531, 182 S.W.2d 915 (1944); see *Spivey v. State*, 146 Tex.Cr.R. 11, 171 S.W.2d 140 (1943). See also *Jones*, supra; *Etchieson v. State*, 574 S.W.2d 753 (Tex.Cr.App. 1978); *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

"Extraneous transactions constituting offenses shown to have been committed by the accused may become admissible upon a showing by the prosecution both that the transaction is relevant to a [contested,] material issue in the case [and that] the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Ruiz v. State*, 579 S.W.2d 206 (Tex.Cr.App.1979); *Jones*, supra."

When identity has become a contested, material issue, as it did in this case, there must be a showing that the extraneous offense which was committed by the defendant was "so nearly identical in method [to the instant offense] as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed. 1972). If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial potential. *See Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972). Each case inevitably will turn on its unique facts.

In this case the victim was a woman of about 43 years.[1] After attending a high school football game in which her son had played, the victim and her three-year-old grandson returned to her car which was parked on a street near the stadium. It was nighttime and dark, although the scene was lighted by the stadium lights and the lights of automobiles. The victim had opened the door of her car and had leaned half-way into the car to place the child on the seat when a man came up from behind her, poked something sharp in her side, and told her, "Get over and get down, lady." Thinking it was a joke, the victim turned around to look. The man grabbed the child around the neck and said, "Get in and get down and keep your mouth shut, lady, unless you want your little girl hurt." (It was shown that the long-haired child could have appeared to have been a girl.) The man got into the car and pushed the victim over. He opened his clothing and the victim's clothing and attempted to have sexual intercourse with the victim, but was unable to achieve penetration. Continuing to hold the child, the man placed his genitals in contact with the victim's mouth and forced her to engage in deviate sexual intercourse. After an exchange of words,[2] the man left. Ten days later the victim happened to see the appellant at an intersection and she recognized him as the man who had abused her. The appellant denied being the man who had abused the victim and he offered proof of alibi and mistaken identity.

To prove that the appellant was the same person who abused the victim, the State was allowed to present evidence of an extraneous offense that had taken place about a year later. The victim of this offense was Carolyn Glowka, a woman of about 30 years.[3] After shopping at North Star Mall in San Antonio Glowka returned to her car which was parked in the parking lot. It

---

1. The victim testified on June 13, 1977, that she was 46 years old. The offense was alleged to have occurred on October 4, 1974.

2. "Yes, I told him that Jesus loved him and forgave him, and that I forgave him also. And I also asked him what a nice young man like he was—why was he doing this to me. And when

he got out of the car to leave, he looked at me and smirked, and said, 'Jesus loves you, too, lady.' "

3. Glowka testified on June 16, 1977, that she was 32 years old. The extraneous offense occurred on October 9, 1975.

was 5:00 p. m. and it was not dark. As Glowka started to unlock her car the appellant came up beside her and, looking at her, said, "Excuse me, ma'am." Glowka turned closer to her car to give the appellant room to pass. The appellant put his shoulder to the middle of Glowka's back, pinning her against the car; he grabbed her right leg, jerked her shoe off, and ran away with it. Glowka ran to another car where she had seen another man; he was a police officer, and he captured the appellant. (The appellant testified that the entire episode was an accident.)

The State also presented the testimony of a psychiatrist who responded to hypothetical questions that were similar (albeit not identical) to the facts of the two offenses. His opinion was that there was a common motive for the two offenses—to achieve sexual gratification. He was of the opinion that the two offenses were both sexual deviations and had a common element of sadism in which another person was attacked and overpowered. He was of the opinion that the perpetrators of such acts were sexually immature and needed the risk of being caught as a stimulus to be sexually aroused. In his opinion the taking of the shoe was a classic instance of shoe fetishism.

■ In its brief the State argues that "there is a patent similarity to the offenses." As we understand the evidence,[4] the similarities are that both offenses in-

volved assaults on adult women as they were returning to their automobiles in public places, and both offenses were sadistic sexual deviations. It may be noted first that sexual assaults generally are instances of sadistic sexual deviations. To say that two sexual assaults are similar because they are both acts of sadistic sexual deviations is not to point to a device that is so unusual and distinctive as to be like a signature; it is merely to characterize a feature of that general class of offenses. Almost any two sexual assaults could be characterized as sadistic acts, just as almost any two murders could be characterized as violent acts. This is nothing more than dressing in psychological garb the very thing that the law on evidence of extraneous offenses forbids: proof of the repeated commission of a class of offenses to demonstrate that the defendant is a criminal (or sexual deviate) generally.[5]

What we are left with is that both assaults were made on adult women as they were returning to their automobiles in public places. Was this feature so distinctive as to be the appellant's signature? Was it so relevant to the issue of identity—so capable of proving that the appellant, who committed the extraneous offense, must have been the same man who committed the alleged sexual abuse—that its value to the jury outweighed the prejudicial effect which inevitably accompanied it? We hold that it was not.

---

**4.** The State's brief lists seven characteristics which are supposed to be common to both offenses: "sadist acts, in parking lots, with others present, on middle aged women, approached from the back, with desire to humiliate, at expense of being caught." This list is not well grounded in the evidence. Only one offense took place in a parking lot; only one involved a middle-aged woman, as that term is usually understood; only one woman was approached from the back, Glowka having expressly denied being approached from the back (S.F. 580); and the State's expert testified that these offenses (as opposed to sadism in the abstract) involved "overpowering" (R. 603), not humiliating. It also will be noted that "with others present" and "at expense of being caught" are merely two ways of characterizing the same evidence in this case, as would be "sadistic" and "with desire to humiliate."

**5.** In fact the prosecutor made that exact argument to the jury:

"Ladies and gentlemen, I'll admit to you that a normal person doesn't go and steal somebody's shoe, and doesn't get any sexual gratification out of stealing a shoe. But a normal person also doesn't sne1k up on a woman in a parking lot after a football game and force her to commit oral sodomy at knifepoint by threatening her grandson. And I submit to you that this is not a normal Defendant; that he's the same sort of—I hesitate to use the word 'sick', but the same type of person that would do that thing in San Antonio as would do the horrible act that was done on Mrs. ... right here at Antler Stadium."

For the error in admitting this evidence, the judgment is reversed and the cause is remanded.

DALLY, J., concurs in the results.

ONION, Presiding Judge, concurring.

I concur in the result reached although I do not agree with all that is said in the opinion authored by Judge Roberts. The extraneous offense, under the circumstances, should not have been admitted over the objections offered.