NO. 12-01-00201-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


ROBBIE LAWRENCE WILLIAMS,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Robbie Williams was convicted of sexual assault of a child by a jury and was
assessed punishment at eleven years in prison. In three issues, Appellant complains that the trial
court erred when it admitted evidence of extraneous offenses during the guilt/innocence stage of the
trial. We reverse and remand for a new trial.


Background

 Appellant lived with his wife and three stepdaughters. On the occasion in question, the
complainant, one of Appellant's stepdaughters, accompanied Appellant to a trash dumpster located
at a nearby church. On the way back to their house, Appellant picked up the complainant and,
according to complainant's testimony, penetrated her vagina with his finger and then licked her
genitals with his tongue. Appellant's wife testified that Appellant had called her from work on the
morning of the alleged assault and admitted that he had touched and licked complainant's genitals,
but told her that he did so because he knew the complainant had a boy in her room that same evening
and he was trying to determine if the complainant had engaged in sex with him. 

 During direct examination by the State, the complainant explained how Appellant routinely
picked her up, as well as her sisters. On cross, defense counsel asked whether or not Appellant had
ever "done anything" to her or her sisters before, to which the complainant answered negatively. The
State then offered the testimonies of Glenda Brown and Keisha Hunter (aunt and cousin of the
complainant) to show that Appellant had sexually assaulted or attempted to sexually assault other
women. Appellant objected to this evidence as inadmissible extraneous offenses. The trial court
overruled his objection and allowed both women to testify. 

 Brown testified that on two occasions, Appellant drove her to wooded areas and fondled her
breasts and penetrated her vagina with his fingers. Another incident occurred when Brown went to
Appellant's house to see her sister, at which time Appellant grabbed her, pulled up her shirt, and
sucked on her breast. Brown also stated that there were numerous other occasions, about which she
did not remember the specific details, when Appellant touched her sexually without her consent.

 Hunter testified that she saw Appellant at a bootlegger's house, and recognized him as one
of her father's friends. Appellant offered her $20 to have sex with him, which she refused. Hunter
went on to state that Appellant told her that her father wanted her home, and that he would take her
there. Appellant then drove to some woods, but after Appellant grabbed her and asked her again to
have sex with him, Hunter jumped out of the moving pickup and ran to the nearest house to call her
father. She testified that she reported the incident to police, but that nothing ever came of her
complaint.


Evidence of Extraneous Offenses

 In his first issue, Appellant complains that the trial court abused its discretion when it ruled
that the testimonies of Brown and Hunter concerning extraneous offenses were admissible due to
defense counsel's "opening the door" during cross-examination of the complainant. The State
questioned the complainant as follows: 


 Q. When he headed back towards the house, was that when he picked you up?


 Yes. He grabbed me and picked me up.



 What did you do when he grabbed you?



 I tried to let go, but he's strong.



 Was he very strong?



 Yes.



 Have you seen him pick up your sisters before?



 Yes.



 Okay. Not unusual for him to pick y'all up?



 No.



 Defense counsel then cross-examined the complainant:



 Mr. Williams is your stepdad; is that correct?



 Yes.



 How long had he . . . him and your mom been married before this happened?



 About ten years, I think.



 Okay, in those ten years, he's never done anything to you or your sisters; is that correct?



 Yes.



 The State argues that Appellant's cross-examination of the complainant opened the door to
evidence of a sexual assault and an attempted sexual assault. Further, it maintains that the testimony
of extraneous offenses went to design, intent, opportunity, motive, and plan. Also, according to the
State, the testimonies of complainant's cousin and aunt were admissible to show absence of mistake
or accident, since Appellant's wife testified that he told her he had touched her daughter's genitals
in order to check for sperm to see if she was having sex. Appellant argues, on the other hand, that
the State left the impression that there was something sexual about Appellant picking up the
complainant and her sisters, which he wished to clarify, and that his questions in no way opened the
door to the testimony of two unrelated witnesses. He also contends that the only purpose of the two
women's testimonies was to demonstrate that Appellant's character was one of a sexual predator and
that he acted in conformity with that character when he assaulted the complainant. Further,
Appellant maintains that even if the extraneous offenses were relevant to issues such as mistake or
accident or intent, testimony of those occurrences was much more prejudicial than probative. 

Standard of Review

 The standard of review in determining whether a trial court erred in its admission of evidence
is abuse of discretion. Mozon v. State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). A trial court
abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991). It is a question of whether the court acted "without reference to any guiding rules and
principles," or whether the act was "arbitrary or unreasonable. Id. at 380. We will uphold the trial
court's decision on the admission of evidence if it is correct on any theory of law applicable to the
case. See McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997). 

 Evidence of a person's bad character is generally not admissible for the purpose of showing
he acted in conformity therewith. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). 
Under the Texas Rules of Evidence, this includes evidence of "other crimes, wrongs, or acts." Tex.
R. Evid. 404(b). The rule exists, in large part, to counter the possibility that evidence may be
admitted to show a defendant's corrupt nature from which the jury may then render a verdict not on
the facts of the case before them but, rather, on their perception of the defendant's character. Rankin
v. State, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996). Under Rule 404(b), extraneous evidence
introduced solely to show character conformity is inadmissible. Id. However, when read in light
of Rules 401 and 402, if evidence is introduced for a purpose other than character conformity, has
relevance to a "fact of consequence" in the case, and remains free of any other constitutional or
statutory prohibitions, it may be admissible under Rule 404(b). Id. at 709-10. 

 Extraneous offenses may be admissible to show motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident, provided that the probative value is not
substantially outweighed by its prejudicial effect. Montgomery, 810 S.W.2d at 377. The Texas
Court of Criminal Appeals has also held that extraneous evidence is admissible to rebut defensive
theories. Powell, 63 S.W.3d at 438. However, merely introducing evidence for a purpose other than
character conformity, or any of the other enumerated purposes in Rule 404(b), does not, by itself,
make that evidence admissible. Rankin, 974 S.W.2d at 709. The extraneous offense must also be
relevant to a "fact of consequence" in the case. Id.; Owens v. State, 827 S.W.2d 911, 914 (Tex.
Crim. App. 1992). 

Plan or Scheme to Establish Identity

 In Owens, the only ultimate fact in dispute was whether the appellant committed the charged
offense, i.e., aggravated sexual assault of a child. Id. at 916. There was no dispute as to identity,
motive, intent or any of the other exceptions listed in rule 404(b). Id. The jury had the testimony
of the appellant and the complainant, appellant's daughter; the State then produced another of the
appellant's daughters as a rebuttal witness after the appellant denied that the offense occurred, and 
other testimony "implicitly raised" the defensive theory that the complainant was trying to frame the
appellant. Id. at 914. The Court of Criminal Appeals held that evidence of an extraneous offense
tending to show the appellant's "system" could not assist the jury in its determination of whether or
not the appellant molested the complainant except by showing character conformity in violation of
Rule 404(b). Id. Extraneous offense evidence demonstrating a unique system would only be
admissible when the material fact at issue is the defendant's identity. Id. 

 In the case before us, the prosecutor raised the issue of Appellant's "system" in closing
argument as follows: 


 You heard from Glenda Brown about how a series of times when this defendant got her alone in an
isolated area and made unwanted sexual advances on her. You know what really got to me was when
Mr. Conine kept asking her or kept trying to suggest that this was consensual, that she wanted it
somehow. You know what she said? She said, I'm not the bad guy here. And she's right. She's not
the bad guy. Keisha Hunter is not the bad guy, and Jessica Brown is not the bad guy. And you know
why their testimony is important? Because it corroborates what Jessica told you, because there's
some consistent things that happened between all three of those girls. (emphasis added).



 In order for a court to correctly admit evidence of extraneous offenses to show the appellant's
system or modus operandi, "there must be a showing that the extraneous offense which was
committed by the defendant was 'so clearly identical in method [to the charged offense] as to
earmark them as the handiwork of the accused'" Collazo v. State, 623 S.W.2d 647, 648 (Tex. Crim.
App. 1981) (quoting E. Cleary, McCormick's Handbook of the Law of Evidence 449 (2d ed.
1972)). The State must show more than the mere repeated commission of crimes of the same type
or class: "The device used must be so unusual and distinctive as to be like a signature." Id. "If there
is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its
prejudicial potential." Id. In the present case, however, the similarities of the extraneous offenses
and the charged offense in this case are not so unusual as to signal conclusively that the three
offenses were the handiwork of the same individual. Further, the issue of identity is not present in
this case. Therefore, the extraneous offenses are not admissible under the guise of "system" to show
identity.

Intent and Rebuttal of Defensive Theory of Mistake or Accident

 The material fact in dispute here is whether Appellant digitally penetrated or licked his
stepdaughter's genitals. Intent is not at issue in this case. It is immaterial, legally, whether Appellant
touched complainant for his own sexual gratification or to determine if complainant had had sexual
relations with her boyfriend. If the act itself was committed, then it constituted sexual assault. See
Tex. Pen. Code Ann. § 22.011(a)(2) (Vernon 1994). Consequently, the fact that the extraneous
offenses would tend to show that Appellant did not mistakenly or accidentally penetrate or lick
complainant's genitals is irrelevant as to showing Appellant's intent. Also, if Appellant's act of
checking to see if his stepdaughter had engaged in sex was an implicit defensive theory in this case,
it was an irrelevant theory with no legal consequence. (1) Further, we cannot say that this "defense"
was ever raised, either explicitly or implicitly. (2) The extraneous offenses are not necessary to
establish the element of intent (because intent is not at issue) or to negate the claim of accident
(because "mistake or accident" is not a legally cognizable defense against a charge of sexual assault);
consequently, the testimonies of Brown and Hunter are not admissible on either of those bases. 

Rule of Optional Completeness

 One of the principles on which the trial court, on the record, admitted the evidence of the
extraneous offenses was the rule of optional completeness. Tex. R. Evid. 107. Specifically, the trial
court ruled as follows:


 The Court: Okay. After looking over the record, this is what I found. First, during cross-examination on page 169, the following was asked of the complainant by Mr.
Conine: "Okay, in those ten years, he's never done anything to you or your sisters;
is that correct?" And the answer is "yes." I also found in redirect, Ms. Cashell
asked the complainant: "Your sisters get along with him?" And the answer was, "I
guess, yes."

 . . . .

 However, I am convinced that Mr. Conine did open the door because with this
question and answer the jury has been given a false impression that this kind of
event had never happened before involving either this complaining witness or --
I believe the other two witnesses you intend to call are her sisters?


 Ms. Cashell: No sir, they are not her sisters. One is a cousin and one is an aunt.


 The Court: Okay. And the gist of that testimony would be?


 Ms. Cashell: That he had attempted to sexually assault both of them.


 The Court: Okay. I am going to rule that this testimony is admissible in order to rebut the false
impression that has been left. That's my ruling.



 After hearing the testimony of the two potential witnesses outside the presence of the jury,
the trial court stated the following:


 Okay. Well, I am satisfied that the State is correct with respect to the door having been opened and
a false impression having been created. Certainly, the two witnesses . . . that have appeared this
morning, it will be up to the jury to determine whether or not they are credible. And what we --- what
I may think about the credibility has no bearing. . . .Certainly, under 404(b), I believe it is, evidence
of a common design, scheme, that kind of thing, that kind of evidence is admissible.


 The purpose of the rule of optional completeness is to reduce the possibility of the fact finder
receiving a false impression from hearing the evidence of only part of an act. Evans v. State, 643
S.W.2d 157, 161 (Tex. App.-Austin 1982, no pet.). Under this provision, rebuttal testimony is
admissible, even though it contains evidence of extraneous offenses. Id.; Callaway v. State, 818
S.W.2d 816, 827 (Tex. App.-Amarillo 1991, pet. ref'd). When defense counsel pursues a subject
that would ordinarily be outside the realm of proper comment by the prosecutor, he opens the door
and creates a right of reply for the State. Parr v. State, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977). 
Once a matter is injected into the proceeding, evidence to fully explain the matter becomes relevant
and admissible, even though the evidence might not otherwise be admissible. Id. Rule 107 is
designed to guard against "the possibility of confusion, distortion or false impression that could rise
from the use of a portion of an act, writing, conversation, declaration or transaction out of proper
context." Livingston v. State, 739 S.W.2d 311, 331 (Tex. Crim. App. 1987). When a defendant
opens the door on an issue by attempting to present an incomplete picture of an incident, the State
is permitted to complete the picture. Skillern v. State, 890 S.W.2d 849, 864 (Tex. App.-Austin
1994, pet. ref'd). However, a party may not stray beyond the scope of the invitation. Schutz v.
State, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997). The rule only permits admission of evidence on
the same subject as previously admitted. Roman v. State, 503 S.W.3d 252, 253-54 (Tex. Crim. App.
1974); Lawson v. State, 854 S.W.2d 234, 238 (Tex. App.-Austin 1993, pet. ref'd).

 In the case before us, the complainant was asked if Appellant had ever done anything to her
or her sisters before the night of the charged offense. She said no. The State then argued that the
cross-examination of the complainant in this regard left a false impression with the jury that
Appellant had never sexually assaulted anyone, thus paving the way for admission of the extraneous
offenses. We disagree. If, in fact, Appellant had previously acted inappropriately with any of his
stepdaughters, evidence of an extraneous offense against any one of them would be admissible under
the rule of optional completeness. Instead, the testimony of a cousin and an aunt were admitted. In
this case, the State clearly strayed beyond the scope of the invitation. Accordingly, we hold that
evidence of the extraneous offenses are not admissible under the rule of optional completeness. 

Conclusion 

 On this record, proof of the sexual assault against Glenda Brown and the attempted assault
against Keisha Hunter serves no probative function other than to show Appellant as a person who
commits sexual assaults in general, and, therefore, was more likely to have committed the sexual
assault against the complainant, an inference rule 404(b) strictly forbids. We cannot find that
evidence of the extraneous offenses has any true relevance apart from Appellant's character or his
actions in conformity therewith. Rule 404(b) proscribes the admission of such evidence. Because
the trial court failed to identify any legitimate reason for allowing evidence of these extraneous
offenses and our independent review of the record reveals none, we hold that it was an abuse of
discretion for the trial court to admit evidence of them.


Harm Analysis

 We now consider whether the trial court's error is reversible. Because the erroneous
admission of an extraneous offense is not constitutional in nature, (3) we must determine if it affects
a substantial right. Tex. R. App. P. 44.2(b). If the error does not affect a substantial right, it is
harmless. (4) Id. Neither the State nor Appellant must demonstrate harm when an error has occurred. 
Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Rather, it is the appellate court's duty
to assess harm after a proper review of the record. Id. at 5. This means that the appellate court
should consider everything in the record, including testimony and physical evidence, the nature of
the evidence supporting the verdict, and the character of the error and its relationship to other
evidence. Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). In addition, the appellate
court may consider the trial court's instructions to the jury, the theories of the case that the State and
defendant have espoused, arguments to the jury and relevant voir dire. Id. 

 A substantial right is violated when the error made the subject of the appellant's complaint
had a substantial and injurious effect or influence in determining the jury's verdict. King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight influence
on the verdict, it is harmless. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
However, if the reviewing court harbors "grave doubts" that an error did not affect the outcome, that
court must treat the error as if it did. United States v. Lane, 474 U.S. 438, 449, 106 S. Ct. 725, 732,
88 L. Ed. 2d 814 (1986). The United States Supreme Court has defined "grave doubts" to mean "in
the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the
harmlessness of the error." O'Neal v. McAninch, 513 U.S. 432, 435, 115 S. Ct. 992, 994, 130 L.
Ed. 2d 947 (1995). If the reviewing court is unsure whether the error affected the outcome, the court
should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in
determining the jury's verdict. Id.

 Brown's and Hunter's testimonies undoubtedly had more than a slight effect upon the jury's
decision. They gave detailed accounts of their assaults, identifying Appellant as the man who
assaulted them. Brown testified that Appellant sexually assaulted her in much the same way he was
accused of sexually assaulting the complainant. And Hunter's age at the time of the attempted
assault was the same as the complainant's in this case. (5) Further, the State emphasized the evidence
of the extraneous offenses and argued that they "corroborated" complainant's testimony. Given that
complainant was the only witness to the event, Brown's and Hunter's testimony significantly
bolstered the State's case. Their damaging testimony almost certainly played a significant role in
Appellant's conviction. This is especially true since there was absolutely no physical evidence of
a sexual assault. Further, testimony of extraneous offenses constituted a third of the State's case 
(fifty pages out of one hundred and sixty-three pages of testimony). In light of these facts, we have
grave doubts that the trial court's error in allowing evidence of the extraneous offenses did not affect
the outcome. Therefore, we must treat the error as having a substantial and injurious effect upon the
jury's verdict. Accordingly, we find the error harmful and reversible. (6)

 We reverse Appellant's conviction and remand the case for a new trial.



 SAM GRIFFITH 

 Justice



Opinion delivered February 19, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.



















(DO NOT PUBLISH)
1. The only defense to prosecution under § 22.011(a)(2) is that the "conduct consisted of medical care for
the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or
sexual organ of the actor or a third party." Tex. Pen. Code Ann. § 22.011(d) (Vernon 1994).
2. The court in Owens also held that it was improper to admit evidence of an extraneous offense to rebut the
appellant's "implied" theory of "frame-up," since it was not raised at trial. See Owens, 827 S.W.2d at 917. 
3. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)(error under the rules of evidence in
the admission of evidence constitutes nonconstitutional error).
4. The rule states that, "[a]ny other error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded." Tex. R. App. P. 44.2(b).
5. As we stated earlier, the similarities between the alleged offenses and the charged offense are not so
unique as to show a "system" or a "design" of the defendant.
6. Having found reversible error based on the court's admission of the extraneous offenses, we need not
address Appellant's remaining issues.