

NUMBER 13-10-00375-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ALFREDO TORRES,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Alfredo Torres, appeals his murder conviction,[1] contending that the evidence is insufficient to support his conviction. By three other issues, appellant argues that the trial court erred in admitting: (1) extraneous-offense evidence;[2] (2) hearsay

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

[2] *See* TEX. R. EVID. 404(b).

testimony from a non-conspirator;[3] and (3) an uncorroborated statement against interest.[4] We affirm as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND[5]

Around 9:30 p.m., Mario Diaz was driving home with his wife, Modesta Diaz, and Modesta's mother, Elena G. Ayala. Elena sat in the back seat on the passenger side.

As they were driving, a dark, "bluish or green" S.U.V. came up behind them. The S.U.V. "looked like . . . a Jimmy or like a Jeep . . . ." After trailing them for about two minutes, the S.U.V. drove up on their left side as if it were going to pass them. But, after it slowly passed them, the S.U.V. continued to drive on the left side of the road instead of moving into the right lane. Mario worried that the driver was drunk, so he decelerated to create distance between the two vehicles. As the two vehicles approached an intersection, the S.U.V. cut into the right lane and stopped; the S.U.V. "was across completely in front" and blocking the road. Mario stopped his vehicle and "blew the horn thinking that they were going to make a turn." A slender, young man in blue jeans and a white t-shirt exited the back passenger seat of the S.U.V. with his face covered with something similar to "a white cloth." He was holding a small, "metallic" handgun. Mario told his wife to duck, put the car in reverse, and reversed away from the intersection. Mario saw the young man raise the gun, hold it sideways, "aim it at us," and shoot.

---

[3] *See* TEX. R. EVID. 801(e)(2)(E).

[4] *See* TEX. R. EVID. 803(24).

[5] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

Modesta heard the gunshot. She looked up and saw that they were driving backwards. Elena asked her, "[W]hat was that daughter?" Modesta, not wanting Elena to be scared, told her that she heard a firecracker. Elena responded, "[N]o, daughter, it was a shot. It hit me." Modesta turned around saw that Elena was bleeding.

Modesta called 9-1-1. An ambulance met them at a convenience store further down the road. Elena was placed in an ambulance and taken away. She died before reaching the hospital. The Hidalgo County's chief forensic pathologist determined that Elena died from a gunshot wound. The Hidalgo County Sheriff's Department began an investigation and took statements from Mario and Modesta. In their statements, Mario and Modesta attested that two people were involved: a driver and the young man who shot Elena.

Upon investigating the crime scene, the sheriff's department discovered that the Arguindegui Oil Company, which was located on the street and near the intersection where the crime occurred, had a surveillance camera pointed at its gate. Based on the camera's orientation, it captured part of the road where the crime occurred. The sheriff's office obtained a copy of the video footage from the company's terminal manager that had been taken around the time of the 9-1-1 dispatch. The footage was grainy because the low-resolution camera could not capture clear images in the dark, and headlights "washed out" details. The sheriff's office sent a copy of the footage to Charles Eugene Henderson Jr., a DPS Senior Forensic Video Specialist. Henderson attempted to enhance the video with various software but was only able to determine that a "S.U.V. type of vehicle, like a—a Jeep" was the first vehicle to approach the intersection. Max

3

Cantu, the lead investigator, testified that the sheriff's department "learned through the investigation that we were looking for a . . . late 90's to 2000 model Jeep Cherokee, grayish or green in color."

At the crime scene, investigators found a ".40 . . . Smith & Wesson" cartridge case. Crime-scene investigator Eduardo Aleman uncovered a bullet lodged in the plastic molding in the back, passenger door of the Diaz car. He also found a bullet hole in the back left door, and he concluded that the bullet entered through that door before traversing the car's cabin and lodging in the back right door.

An anonymous caller informed the sheriff's department that a man named Ricardo Lopez provided the weapon used to commit the homicide. Homicide investigator Fernando Tanguma went to Lopez's house. Investigator Tanguma observed that Lopez's car was a Chrysler 300, the same model of car driven by Mario and Modesta Diaz. Lopez consented to a search, and showed Investigator Tanguma where the gun was located. Investigator Tanguma retrieved a "silver," .40 caliber Smith & Wesson semi-automatic handgun from underneath the house, which was wrapped in newspaper. The gun was slightly rusted. Aleman decided that a fingerprint analysis would produce no results. He swabbed the gun for DNA, but he did not find any DNA on it. Likewise, he did not get any prints or DNA from the cartridge case.

Richard Hitchcox, a DPS forensic firearm and tool marks examiner, performed tests with the gun, and concluded that the gun fired the cartridge case that was recovered at the crime scene. He was unable to assume the same conclusion for the actual bullet; he explained that the bullet had "class characteristics" that were consistent with the

4

handgun, but, due to the bullet's condition,[6] he could not conclusively establish sufficient individual characteristics to "effect an identification."

Lopez's build did not match the "thin[,] built individual" described by Mario and Modesta. Investigator Tanguma asked Lopez to help find suspects, but Lopez told Investigator Tanguma that "he had nothing to say." However, Lopez's wife, Alejandra, offered to help him find other potential suspects in the case. She directed Investigator Tanguma to potential suspects' houses, including the house where Ramirez resided. Investigators later discovered that Ramirez's mother owned a light green Jeep Cherokee, which Ramirez sometimes drove. Alejandra also pointed to the house where appellant resided.

Investigator Cantu learned that appellant, Ramirez, and Lopez were friends. When Lopez was subsequently charged in his own criminal trial, Investigator Cantu obtained information that led him to three informants: Juan Rocha Morales, Jesus Rocha Morales, and Jesus Wilfredo Rodriguez. Investigator Cantu testified as follows:

> [I]t was learned that the motive was for some wheels for a co-defendant, wheels off of a Chrysler 300 which the co-defendant also, it was learned that he also owned a Chrysler 300. And . . . through the investigation and all the witnesses that we spoke with, it was learned that indeed was what they were trying to get was some wheels for—Ricardo Garza Lopez.
>
> . . . .
>
> It was learned that the Defendant . . . had gone looking for a gun and was in possession of a gun, was going to pay for that gun with some wheels for the Chrysler 300.

---

[6] Hitchcox asserted that the bullet was made of cheaper material, and it therefore exhibited more "defamation or mutilation," "gouging," and "flattening" than other bullets. In addition, it was missing two jackets ("the copper portion on the outside").

5

Investigator Cantu testified that the informants' statements also implicated Ramirez in appellant's attempt to steal "wheels." Ramirez, however, was deported to Mexico by the time of appellant's trial, and Investigator Cantu did not know where to find him. The sheriff's department located Ramirez's mother's green Jeep Cherokee, which she claimed to have let a friend borrow. It had been seized by Border Patrol and was impounded in Brooks County, Texas.

Investigator Cantu obtained affidavits from Juan Rocha Morales, Jesus Rocha Morales, and Jesus Wilfredo Rodriguez. Juan testified that appellant and Ramirez came to his house looking for Jesus Rocha Morales, his nephew. Appellant told him, that appellant "f__ed up. They—they did something stupid . . . like they shoot somebody . . . ." According to Juan, Ramirez told appellant to "Shut up. Shut up. Let's go." Juan testified that appellant returned three days later, asking "if I want to buy the gun."

Jesus Rocha Morales testified that appellant told him that he messed up and accidentally killed an old lady. Jesus Wilfredo Rodriguez testified that he went to Lopez's house with appellant and Ramirez. When asked at trial, "And what did Ricardo Lopez tell Alfredo Torres [appellant] to do?" Rodriguez responded, "That he was going to take some rims, that he was going to take a gun to get some rims." Rodriguez testified that about one week later, appellant showed up at his house in the middle of the night looking frightened and saying that he "[m]essed up," "was into problems," and had "done something bad . . . ." Rodriguez also testified that "I remember [appellant] told me that he had hit the door and that he thought that he had hit someone but he didn't know whom." On cross-examination, Rodriguez stated that appellant stated he accidentally shot the

6

gun.

Investigator Cantu concluded that the three affidavits "were corroborating statements through physical evidence that had already been recovered in . . . the case against Ricardo—Ricardo Garza Lopez." He filed the case with the District Attorney's Office and obtained an arrest warrant for appellant. Investigator Cantu subsequently discovered that appellant had been arrested on an unrelated charge.

A grand jury indicted appellant for capital murder. Appellant pleaded not guilty. In addition to the foregoing testimony, the court admitted testimony from Angelica Chavarria, which the State submitted under Texas Rule of Evidence 404(b) to establish appellant's identity. At the guilt-innocence phase of trial, and outside the presence of the jury, the trial court heard testimony from Chavarria that the State offered for identification purposes. She had been a victim of an aggravated robbery during the previous year. She testified that a green Jeep Cherokee followed her, passed her, and then blocked her path. She said that a young man got out of the passenger side of the Jeep and approached her car with a small, "silver" handgun. He ordered her to get out of her 1997 Ford Mustang, which she claimed had little value except for its "rims."[7] Chavarria got out of her car, told the young man that she would not give him the car, and returned to her car to get her phone. When she looked up, the young man pulled his t-shirt over half of his face, and he re-entered the Jeep and left. Chavarria identified appellant as the young man. In addition to Chavarria's testimony, it was shown at trial that appellant had been

---

[7] Chavarria testified, "I was told several times that the rims was [sic] worth more than the car."

7

arrested and placed on deferred adjudication for that offense, [8] and the Jeep's VIN from that case was the same VIN as Ramirez's mother's Jeep.

The jury convicted appellant of the lesser-included offense of murder, and, on the jury's verdict, the trial court sentenced him to life imprisonment. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State,* 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, (1979)) (emphasis in original); *see Brooks v. State,* 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State,* 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State,* 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the

---

[8] The jury did not hear about appellant's arrest and the deferred adjudication for that offense.

8

indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* In this case, appellant was convicted of murder. A person commits murder if he "intentionally or knowingly causes the death of an individual."[9] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

The jury heard testimony that appellant was Ramirez's neighbor and friend, and Ramirez's mother owned the Jeep that was used a year earlier in committing an aggravated robbery in a manner similar to the manner in which this offense was committed. Chavarria identified appellant as the man who threatened her, and Investigator Cantu testified that the police report for that offense named appellant and Ramirez as the suspects. In both cases, the S.U.V. tailed, passed, and then blocked another car's path, and a young man approached the blocked-in car with a "silver" handgun. Testimony and video evidence indicated that an S.U.V. similar to the green Jeep that had been used in the aggravated robbery was used in Elena's murder. In addition, statements and testimony from Juan Rocha Morales, Jesus Rocha Morales, and Rodriguez implicated appellant in the present offense. An analysis of the cartridge case found at the crime scene and the .40 Smith & Wesson handgun recovered from Lopez's house led Hitchcox to conclude that the cartridge case was fired from the gun. Witness testimony connected appellant, not Lopez, to the gun and the crime. In addition, Lopez did not match the "slender, young" description of the attacker, but appellant did. Based on this evidence and the jury's role in weighing the credibility of the evidence, we find that

---

[9] The judgment erroneously cites section 19.02(a)(2) of the Texas Penal Code, but that section merely defines the phrase "sudden passion." *See* TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). Section 19.02(b)(1) identifies the elements of murder. *See id.* § 19.02(b)(1).

the evidence is sufficient to support appellant's murder conviction. We overrule appellant's first issue.

### III. ADMISSION OF EXTRANEOUS-OFFENSE EVIDENCE

By his second issue, appellant contends that the trial court erred by admitting extraneous-offense evidence. More specifically, appellant argues that the extraneous offense did not prove identity because it was not sufficiently similar to the facts of this case. Appellant also argues that the probative value of the extraneous offense is substantially outweighed by the danger of unfair prejudice in violation of Texas Rule of Evidence 403. We disagree.

**Standard of Review**

A ruling on whether extraneous-offense evidence is admissible is a question of law for the trial court. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). So long as the trial court's ruling is within the "zone of reasonable disagreement," no abuse of discretion exists and the ruling will be upheld. *Id.*; *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc). A trial court's ruling is usually within this zone if it shows that the extraneous evidence is relevant to a material, non-propensity issue. *See De La Paz*, 279 S.W.3d at 344.

**Texas Rule of Evidence 404(b)**

To be admissible, evidence must be relevant. TEX. R. EVID. 402; *Lopez v. State*, 288 S.W.3d 148, 164 (Tex. App.—Corpus Christi 2009, pet. ref'd). Evidence of other

crimes, wrongs, or bad acts is not admissible to show character conformity but may be admissible for other purposes. *Lopez*, 288 S.W.3d at 164. Texas Rule of Evidence 404(b) contains a non-exhaustive list of material, non-propensity uses of extraneous-offense evidence: motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *see Albrecht v. State*, 486 S.W.2d 97, 100–01 (Tex. Crim. App. 1972); *Lopez*, 288 S.W.3d at 164. Here, the State offered the evidence to prove identity, an explicitly recognized exception to the general rule precluding extraneous-offense evidence.

When an extraneous offense is offered to prove identity, the common characteristics or the device used in each offense must be so unusual and distinctive as to be like a "signature." *Pena v. State*, 867 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1993, writ ref'd) (citing *Collozo v. State*, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981)). Signature features must consist of more than mere repeated commissions of the same class of crimes. *Id.* (citing *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992)). The extraneous offense must be "so nearly identical in method to the charged offense as to earmark them as the handiwork of the accused." *Lopez*, 288 S.W.3d at 166 (citing *Owens*, 827 S.W.2d at 914). It is a determination that is made on a case by case basis. *Pena*, 867 S.W.2d at 99. No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person. *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008).

For an extraneous offense to be admissible to show identity, identity must be raised as an issue in the case. *Price v. State*, 351 S.W.3d 148, 151 (Tex. App.—Fort Worth 2011, pet. ref'd) (citing *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)). Appellant's defense frequently challenged the State's evidence relating to identity, and appellant does not suggest that identity was not at issue. Rather, appellant contends that the extraneous offense was not sufficiently similar to be used as identity evidence.

We conclude that the trial court did not abuse its discretion in admitting Chavarria's testimony as evidence of identity. In both offenses, a green Jeep Cherokee blocked the roadway and a young man approached the blocked-in vehicle with a "silver" handgun. Chavarria identified appellant as the "young man" from her aggravated robbery, and he used Ramirez's mother's Jeep to commit that offense. These similarities establish identity. *See Pena*, 867 S.W.2d at 99 ("[T]he repeated use of the same vehicle in crimes so similar is a sufficient 'signature' characteristic to justify the admission" of the extraneous offense to show identity.").

**Texas Rule of Evidence 403**

Although relevant evidence may be admissible under Texas Rule of Evidence 404(b), it may nevertheless be inadmissible under rule 403. TEX. R. EVID. 403; *see Lopez*, 288 S.W.3d at 164–65. Under rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." TEX. R. EVID. 403. "Probative Value" means "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a

12

fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" means a tendency to suggest a decision on an improper basis, such as hostility or sympathy. *Id.* at 879–80.

> A rule 403 balancing test includes the following factors:
>
> (1) how compelling the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
>
> (2) the potential the other offense evidence has to impress the jury in some irrational but nevertheless indelible way;
>
> (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and
>
> (4) the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.*, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*De La Paz*, 279 S.W.3d at 349 (citing *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000)). We reverse the trial court only upon a clear abuse of discretion. *Wyatt*, 23 S.W.3d at 26 (citing *Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1996)).

Appellant does not dispute that the extraneous offense was probative. Rather, he asserts that the evidence was more prejudicial than probative. Our review reflects that the challenged evidence made appellant's identity more probable, took little time to develop, and supported the element of identity, which was otherwise premised only on statements from Juan Rocha Morales, Jesus Rocha Morales, and Rodriguez—statements that could be self-serving rather than true. The 403 balancing

13

factors weigh more heavily toward admitting the evidence. Accordingly, we hold that the trial court did not abuse its discretion by admitting the extraneous-offense evidence. Appellant's second issue is overruled.

## IV. PRESERVATION OF ERROR

By his third issue, appellant contends that the trial court erred by admitting, under the co-conspirator exception to the hearsay rule,[10] Rodriguez's testimony that he overheard Lopez tell appellant to steal some "rims" because Rodriguez was not a co-conspirator within the meaning of the rule. TEX. R. EVID. 801(e)(2)(E). Appellant further contends that any statements that he directed to Rodriguez, such as the statement that appellant messed up or the one that he shot a door, were not in furtherance of a conspiracy as required by the rule. *Id.* But, appellant did not make these objections when the State sought the court's permission to elicit Rodriguez's testimony. Rather, appellant's counsel merely stated, "I have a right to confront" Rodriguez on cross-examination. Appellant's issue on appeal does not comport with his trial objection.

When a defendant claims on appeal that the trial court erred in admitting evidence, he must have made a proper and specific objection at the time the evidence was offered to preserve his right of review of that evidentiary claim. TEX. R. APP. P. 33.1(a)(1)(A); *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); *Lopez*, 288 S.W.3d at 160. The record must show that the trial court either ruled on the objection or refused to rule on it and the "complaining party objected to the refusal." TEX. R. APP. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). "[I]f an objection made in the trial

---

[10] "A statement is not hearsay if the statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E).

14

court differs from the complaint made on appeal, a defendant has not preserved any error for review." *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); *see Guevara v. State*, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003); *Moreno Denoso v. State*, 156 S.W.3d 166, 174 (Tex. App.—Corpus Christi 2005, pet. ref'd). Thus, because appellant's objections in the trial court do not comport with his complaint on appeal, we must overrule appellant's third issue. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Guevara*, 97 S.W.3d at 583; *Moreno Denoso*, 156 S.W.3d at 174.

By his fourth issue, appellant argues that the trial court erred by admitting Rodriguez's testimony of appellant's incriminating statements without seeking sufficient corroborating evidence as required by Texas Rule of Evidence 803(24).[11] The record, however, includes no objection, motion, or request preserving this issue for our review. *See Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) ("As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court."). Accordingly, we overrule appellant's fourth issue.

## V. MODIFICATION OF JUDGMENT

We note that the trial court's judgment incorrectly lists Texas Penal Code "Section 19.02(a)(2)" as the associated statute for the conviction. This error is typographical given that section 19.02(a)(2) merely defines the phrase "sudden passion;" it does not provide the elements of murder. *See* TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). Section 19.02(b)(1) identifies the elements of murder. *See id.* § 19.02(b)(1).

---

[11] In relevant part, rule 803(24) states, "In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX. R. EVID. 803(24).

The Texas Rules of Appellate Procedure give this Court authority to modify judgments sua sponte to correct typographical errors and make the record speak the truth. *See* TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, writ ref'd). We conclude that the reference in the judgment to section 19.02(a)(2) of the Penal Code should be stricken, and we modify the judgment to reflect the statute underlying the conviction—section 19.02(b)(1) of the Penal Code. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

## VI. CONCLUSION

We affirm the trial court's judgment as modified.

GREGORY T. PERKES
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of November, 2012.